# WHEELING.

TRACEY et al. v. W. H. AND R. A. SHUMATE et al.

Submitted January 16, 1883—Decided November 10, 1883.

1. If a deed of trust is executed by a husband conveying his land, and the wife does not join in the conveyance, and the land is sold in the lifetime of the husband, the husband is regarded as dying seized of the land subject to the deed of trust, and the widow is entitled to have her dower in this land in kind laid off by metes and bounds. (p. 498.)

2. In construing a will to ascertain whether a provision in it is intended by the testator as in lieu of dower and in determining whether it be a jointure, the situation of the testator, when his will was made, and the circumstances then surrounding him may be looked to by the court, just as they may be in determining the true construction of the will in any other case. (p. 499.)

3. When a widow is entitled to have her dower laid off in kind, unless she has made a valid arrangement waiving this right, it is the duty of the court before decreeing the sale of the land to have her dower laid off in kind; and if this be not done, it is error, for which such decree will be reversed, unless it is waived by the parties by subsequent proceedings in the cause and by their failing to take an appeal before a confirmation of the sale

made under such decree, which confirmation is sustained by the Appellate Court.　(p. 500.)

4. If before the confirmation of such sale the report of the sale is excepted to, because the decree ordering the sale directed the land to be sold subject to the dower instead of first laying it off by metes and bounds, and it clearly appears to the court, that the sale of the land was materially affected by such error, and it brought materially less than it would otherwise have brought, as by showing that one or more bidders, who would but for such failure to lay off the dower have bid upon the land, did not bid or bid materially less than they otherwise would, the court should refuse to confirm such sale ; and if it fails to do so, its decree confirming such sale will be reversed on appeal. (p. 501.)

5. A sale under the decree may be set aside before confirmation for gross inadequacy of price ; but if it be attempted to establish this by parol evidence only, the proof must be very clear, especially if a great time has elapsed between the sale and its confirmation, and during this time no advanced bid has been made to the court.　(p. 516.)

6. The abatement of interest during the war is not based on the fact, that moneys could not be used profitably during the war because of the condition of the country, but solely on the fact that the debtor and creditor resided in countries at war with each other, and the law prohibited the debtor from having any intercourse with his creditor or from paying him the debt. (p. 512.)

7. If a deed of trust be executed by a grantor, who dies, and his land subject to this deed of trust should descend to three heirs, two adults and one an infant, and one of the heirs makes an arrangement with the creditor in the deed of trust without the concurrence of the other two, whereby the land is conveyed by this heir to the creditor with general warranty of title in satisfaction of the debt secured by the deed of trust, the court can not because of their having received the benefit of this arrangement compel either of the other heirs, whether adult or infant, to convey said land to the creditor ; but if they recover their interest in said land of the creditor, their interest so recovered may be subjected by a court of equity to the payment of an amount equivalent to what they would have been liable for, had they, when such arrangement was made, conveyed their interest in said land with general warranty of title.　(p. 502.)

8. A final decree in a chancery cause is as conclusive as a judgment at law ; and it is conclusive on the parties and their privies of every fact, which the final decree necessarily affirmed the existence of, whenever the existence of such facts are again put in issue.　(p. 509.)

9. And the force of such decree as *res adjudicata* can not be destroyed or impaired by showing, that it is clearly erroneous and ought not to have been rendered, provided it be a decree on the merits. But by a decree on the merits is not meant the abstract or moral merits. It is sufficient, that when such decree was entered, the status of the suit was such that the parties might have had their suit disposed of on its merits, if they had then presented all their evidence, and the court had properly understood the facts and properly applied the law. Such a decree is thus conclusive till reversed or in some appropriate manner set aside. (p. 510.)

10. A case, in which a court by referring to a record in the same court of another cause thereby made the record referred to a part of the record in the cause, in which such decree was entered. (p. 511.)

Green, Judge, furnishes the following statement of the case:

At the February rules, 1872, Lockey E. Tracey filed her bill in the circuit court of Mercer alleging, that she was the daughter of Edward H. Tracey, who died August, 1860, leaving a will, a copy of which is filed with the bill. The will is dated August 10, 1860, and by it he gave to his wife Rhoda Tracey a sufficiency to maintain her during her life not mentioning any amount, and to the plaintiff, Lockey E. Tracey, and to his daughter Rhoda and his son Edward G. Tracey five hundred and sixteen dollars each, the will stating that he had already paid to his son the amount of this legacy. To his sons Rowland J. Tracey and Addison H. Tracey he gave five dollars each, to the four children of his son, Zolman R. Tracey, fifty dollars each, and to his granddaughter, Minerva Dean, one hundred and fifty dollars. And if there was any remainder, (the will does not say whether of real or personal property or both) he desired it to be equally divided between his children, Edward G. Tracey, Rhoda Tracey and the plaintiff Lockey E. Tracey. He then directed a certain parcel of land known as Maud Hollow to be sold, and whatever it brought over five hundred dollars was to be paid to his son Rowland J. Tracey; and he appointed John Sarvor and Thomas Little as his executors.

The bill alleges, that Edward H. Tracey died possessed of a small personal estate and a valuable tract of land in Mercer

county, which, the bill says, contained three thousand acres, on which he on March 24, 1860, executed to one Wm. M. Stafford as trustee a deed of trust to secure to Parkinson Shumate a debt of four thousand one hundred and ninety-seven dollars and seventy-one cents due April 1, 1860. A copy of the deed of trust is filed with the bill, and its contents are correctly stated in the bill, except that the tract of land is said to contain about two thousand acres. The deed of trust also conveyed three houses; and there were no special provisions in it in reference to the sale of the land but it simply provided, that, if default was made in the payment of the debt, the property was to be sold according to law, and five per cent. was fixed as the trustee's commission.

The bill further states, that Parkinson Shumate died in Giles county, Virginia, in July, 1866, leaving a will; that at the time of his death the whole of said debt was due and unpaid, and he bequeathed it to his two sons, William H. Shumate and Rufus A. Shumate; that shortly thereafter, on March 10, 1867, the plaintiff, Lockey E. Tracey, her mother, Rhoda Tracey, (who was entitled to dower in said land) and her brother, George E. Tracey, devisees of her father, made a contract with Wm. H. Shumate and Rufus A. Shumate, the owners of said bond of her father, Edward G. Tracey, for four thousand one hundred and ninety-one dollars and seven-one cents with interest from April 1, 1860, by which the said Shumate agreed to take a certain part of said land at the price of four thousand two hundred and twenty-six dollars and eighty cents and give credit for the amount on their said debt secured by said deed of trust; that in pursuance of this contract the plaintiff, Lockey E. Tracey, Edward G. Tracey and her mother, Rhoda Tracey, on August 9, 1867, by a deed with general warranty of title conveyed this parcel of land containing about one thousand five hundred acres to said William H. Shumate and Rufus A. Shumate, which deed was duly admitted to record, and a copy of which is filed with the bill. This deed sets out the boundaries of the land it conveys with general warranty for the consideration of four thousand two hundred and twenty-six dollars and eighty cents; is dated August 9, 1867, and the tract is stated to contain about one thousand five hundred acres, and this

deed states that this four thousand two hundred and twenty-six dollars and eighty cents was credited on the bond of Edward H. Tracey to Parkinson Shumate for four thousand one hundred and ninety-seven dollars and seventy-one cents payable April 1, 1860, said credit being as of March 10, 1860.

The bill further states, that after giving this credit there was about one thousand seven hundred dollars due on this bond with interest from March 10, 1867. For which balance the said Shumates agreed to give the additional credit of five years, as the plaintiff then and now understood the contract, yet in violation of said agreement the trustee, Wm. M. Stafford, on March 9, 1868, sold to the highest bidder for cash the residue of the land conveyed by the deed of trust; and said Wm. A. Shumate and Rufus Shumate became the purchasers for one thousand five hundred and seventy-five dollars; that the possession of this land was still with her mother Rhoda Tracy, who was very old, and who had a dower interest in this land, which had never been assigned to her. The bill alleges that the land was not advertised by the trustee, as the law required, and only six or eight persons attended the sale, none of whom were able to purchase the land except the Messrs. Shumate; that the plaintiff never heard that this sale was made till after the day of the sale; that this land sold for a third of its value notwithstanding the incumbrance of the widow's dower being small, as she was very old; that the sister of the plaintiff, Rhoda Tracy, one of the legatees in her father's will and one who was entitled to a third of the remainder of his estate after the payment of the specific legacy, died a few weeks after her father intestate and without issue; and that the entire personal estate of her father, George H. Tracy, has been exhausted in the payment of his debts and personal expenses.

These are all the facts stated in this bill omitting some matters which are set out as mere opinions of the plaintiff. The prayer of the bill is, that the trustee Wm. M. Stafford be restricted and inhibited from conveying the land sold by him to said Wm. H. Shumate and Rufus A. Shumate, if it had not already been conveyed, and that this sale of this land made August 9, 1867, might be set aside and annulled, and that the court would direct a resale of this land upon such

terms as to the court may seem equitable and proper, and out of the proceeds direct the payment of the residue of this debt secured by this deed of trust, and that the balance of the proceeds of such sale may be by the court distributed between the plaintiffs and defendants interested therein according to their rights under her father's will, and for general relief. Wm. H. Shumate, Rufus A. Shumate, the trustee Wm. M. Stafford, the executors and all the devisees and legatees of Edward H. Tracey were made defendants to this bill.

A final answer to this bill was filed by John Tracey, George Tracey, Rhoda Tracey and Clara Tracey by their guardian *ad litem*, and a joint answer by W. H. Shumate and Rufus A. Shumate, which answers were replied to generally. The bill was regularly taken for confessed as to all the other defendants. All the facts, which we have set out as contained in the bill, were admitted by the answer of the Shumates, except that it is stated, that after the allowance of the credit of four thousand two hundred and twenty-six dollars and eighty cents on their debt for the balance, estimated at about one thousand six hundred dollars, instead of one thousand seven hundred dollars stated in the bill, they were to extend further indulgence upon the annual interest thereon being paid promptly, and a perfect title to the land bought by them being secured to them. This is alleged to have been a parol agreement. The first year's interest was not paid; and Edward G. Tracey, who had the management of the whole affair, agreed that the land might go to sale. They also failed to make a perfect title to the one thousand five hundred acres of land conveyed to them, the Shumates. They say that there were probably twice as many present at the sale as the bill alleged. They claim, that the sale was a fair one, and that the land brought a fair price, subject as it was to the dower of the widow, Rhoda Tracey. They say, that they sold this land, after they bought it, to Edward G. Tracey at one thousand six hundred dollars, an advance of only twenty-five dollars on what they had paid for it; and that they had then to take it back at the request of said Tracey. As evincing their liberality they say, that they have permitted the Traceys to use and occupy the land, which they, the Shumates, had purchased, for nearly four years

without paying any rent, and for a part of the time they had themselves paid the taxes. They deny that there was, as stated in the bill, any artifice to prevent bidders being present at this sale.

This answer further states, that Parkinson Shumate, their father, in his lifetime directed the trustee to sell this land, and thereupon the plaintiff, her mother, Rhoda, and their brother Edward G. Tracey, the grantor in the deed of trust, having died, filed a bill in chancery to restrain said sale. Their father, Parkinson Shumate, answered this bill, and the plaintiffs virtually abandoned it. The answer purports to file a copy of the proceedings in said suit, but no such copy was actually filed with the answer.

It will be seen, that the whole question in issue in this suit on this bill and answer was simply, whether the court would set aside the sale of the residue of the land conveyed by the deed of trust of March 24, 1860, which was made by the trustee Wm. M. Stafford, on May 9, 1868, which the bill alleged was made at a grossly inadequate price, and which sale was improperly made in violation of an agreement. This was denied by the answer; but the bill and answer agree in stating the amount of the debt due, when said sale was made as four thousand one hundred and ninety-seven dollars and seventy-one cents with interest from April 1, 1860, subject to a credit of four thousand two hundred and twenty-six dollars and eighty cents as of March 10, 1867. There was no allegation in the bill, that there was any other abatement to be made from this bond, either because no interest was to be charged during the war, or because the credit was to be applied to the principal of the debt. These seem to have been after-thoughts.

Upon the only question really at issue evidence was taken; but the petition for appeal in this cause states, that the depositions on this issue have not been copied into the record. Neither the appellants nor the appellees in the argument of this cause in this Court complain of the decision by the circuit court on the only question in controversy originally in this cause, when on the 18th day of October, 1873, "the court adjudged, ordered and decreed, that the sale of land made by Wm. M. Stafford as trustee in a deed of trust exe-

cuted to him by Edward H. Tracey in his lifetime bearing date on the 24th day of March, 1860, to secure a certain debt therein mentioned to Parkinson Shumate, to Wm. H. Shumate and Rufus A. Shumate on the 9th day of May, 1868, be and the same is hereby set aside and annulled." I have not deemed it necessary to have brought up on *certiorari* the depositions, on which this decree setting aside this sale was based, as all parties, appellants and appellees, in this Court by not controverting the justice and propriety of the setting aside of this sale tacitly admit its justice, and there is enough appearing in the depositions taken on other subjects subsequently brought into controversy to show, that this sale ought to have been set aside. Having set aside this sale the decree of October 18, 1873, as prayed for in the bill proceeded to decree, that unless the heirs at law of Edward H. Tracey or his executors or some one for them should within thirty days pay off the residue of the debt secured by the deed of trust to the said Shumates, Wm. M. Stafford, trustee, (who was thereby appointed a special commissioner for that purpose) was directed after a specified advertisement to sell to the highest bidder at public auction the residue of all the land, conveyed by the said deed of trust exclusive of one thousand five hundred acres conveyed to the Shumates by Edward G. Tracey and others by deed bearing date on August 9, 1867, not embracing that portion of the land now in the possession and occupancy of defendant, Rowland J. Tracey, known as Maud Hollow Place, the court being of opinion that said portion was not conveyed by said deed of trust. The court being of opinion that Rhoda Tracey, the widow of Edward H. Tracey, was entitled to dower in said lands, the commissioner was ordered to sell the same subject to the widow's dower therein. The terms of sale were a sufficient amount in cash to pay the costs of this suit and expenses of sale, and the residue to be paid in three equal installments in six, twelve and eighteen months from the day of sale. This decree also appointed three persons commissioners to go upon the lands directed to be sold and to lay off by metes and bounds a third part in value of said lands in one body for the widow's dower and make report to the court.

Two days after this decree on October 20, 1873, the court

reciting that "it appearing to the court that the defendants the Messrs. Shumates purchased of the plaintiff and Rhoda Tracey and Edward G. Tracey the land in the bill mentioned, known as the compromise lands, and that the legal title to the same has not been fully conveyed to them but is outstanding in the defendants Rowland J. Tracey, Addison H. Tracey and the infant heirs of Zolman R. Tracey deceased, it was ordered that John A. Douglass, who was thereby appointed a commissioner for the purpose, convey the interest of the defendants, Rowland J. Tracey, H. Tracey and the heirs of Zolman R. Tracey, deceased, as heirs and devisees of E. H. Tracey, deceased, in said land to Wm. H. Shumate and R. A. Shumate." The commissioner of sale, Wm. M. Stafford, pursuant to the decree of October 18, 1873, sold this land on January 4, 1874; and Rufus A. Shumate being the highest bidder became the purchaser at the price of two thousand five hundred dollars, and complied with the terms of sale; and the commissioner made his report on January 30, 1874.

This report was excepted to by the heirs of Edward H. Tracey and the plaintiff, first, because the land was sold for a grossly inadequate price, and secondly, because the commissioner of sale refused to inform the heirs and representatives of Edward H. Tracey of the amount remaining due on the said deed of trust, if any, when he was applied to, and refused to allow credits due on said deed of trust, which should have been credited on the same, so that the heirs of Tracey might liquidate the same, as they were prepared to do, when said credits were entered. To support these exceptions seven affidavits were filed. These affidavits estimate this land to be worth from six dollars to ten dollars per acre, averaging eight dollars per acre.

Rowland J. Tracey made an affidavit in which he stated that the debt secured by the deed of trust was four thousand one hundred and ninety-seven dollars and seventy-one cents due April 1, 1860, on which there was a payment on March 10, 1867, of four thousand two hundred and twenty-six dollars and eighty cents, leaving due on that day four hundred and forty-eight dollars and sixty-one cents including interest and abating interest during the war. The amount due on January 5, 1874, when the commissioner sold the land, was

six hundred and thirty-one dollars and ninety-three cents; that the trustee sold seven hundred and eighty acres of land; that the said trustee having been ordered to sell sufficient to satisfy the *residue of the debt due on the trust-deed* claimed to be due more than four times the actual amount that was due, but refused to make known what was the amount actually due; that if he had been willing to receive this six hundred and thirty-one dollars and ninety-three cents, the amount actually due, the heirs of Edward H. Tracey were ready to pay the full amount abating the war-interest. In another affidavit he states, that he as an heir of Edward H. Tracey before the sale of said tract of land proposed to the commis-sioner to ascertain the amount of residue due under the deed of trust, and that the heirs would then be ready to pay the same after a fair settlement of the amount; that the commissioner was asked to meet the affiant at the court-house to make this settlement, and he failed to do so; that R. A. Shumate refused to receive the amounts due as above calculated and said that the commissioner had no right to receive it and would not receive it. Another by his affidavit states that he heard this conversation with Shumate and that it was correctly stated by R. J. Tracey.

The counter-affidavits as to the value of this land were four in number and placed the value at prices varying from two dollars to three dollars and fifty cents, averaging about three dollars per acre. If there were in this tract five hundred acres, the amount then would be, if the quantities were accurately stated in the deed, the price at which the land was sold, was five dollars per acre; and if there were in the tract seven hundred and eighty acres, as stated by R. J. Tracey, then the land was sold at three dollars and twenty cents per acre. The commissioner made affidavit, that Rowland J. Tracey told him before the sale, that he wished to settle off the deed of trust; that he told Tracey he was willing to receive the money and would go to the court-house, where the papers were, in order that the proper calculations might be made; that Tracey replied he could not go to town; that he had to go home; that a like conversation was had at another time, Tracey declining again to go to town, saying that the commissioner would have counsel there and he

would have none; that on the day before the last conversation he spent the day at the court-house with R. J. Tracey and rode out with him a part of the way, but he said not a word about settling this debt; that the commissioner had been authorized by R. A. Shumate to receive the money, if it was offered.

Upon these affidavits the court in its decree of May 30, 1877, overruled the exceptions to the report of sale and confirmed the sale.

This is the whole of the record of two hundred printed pages, which in any way relates to the controversy in the cause upon the issue joined on the bill and answer, which was simply: Should the sale of the residue of the land other than the one thousand five hundred acres, be set aside and annulled? and which relates to the controversy arising under the proceedings had in court, that is: Should the sale made by the commissioner pending this suit on January 3, 1874, be set aside for inadequacy of price or for any other reason? But after said sale was made on May 6, 1874, the court permitted the plaintiff against the protest of the defendants to file a petition claiming an abatement from the debt of the interest on it during the war. This petition states, that during the war the county of Mercer was occasionally in the possession of each of the contending armies; that during that time the loans were silent; that the petitioner by her agent demanded of the commissioner to borrow the balance due on the deed of trust, and he refused to give the information asked for, but claimed that there was never three thousand dollars due; that she was ready to pay the true amount ascertained by allowing this credit; and she therefore asks to set aside this sale, which she says was made at a ruinous sacrifice, there being in the land sold seven hundred and eighty acres. This petition is not sworn to. At the same time the plaintiff moved to set aside the sale for inadequacy of price on these affidavits, to which the purchaser filed three counter affidavits; and the cause was continued and this motion not acted on till the last decree entered in the cause May 30, 1877, when the sale was confirmed.

The trustee and the defendants, the Shumates, demurred to this petition and filed their answer at once. They insist

that the payment of four thousand two hundred and twenty-six dollars and eighty cents of March 10, 1867, should be applied first to the payment of the interest then due and not as claimed to the principle of the debt, and that in fact it was so applied at the time; that the interest thus paid included the interest also which accrued during the war, and that said interest thus paid cannot be now in effect recovered back.   The answer further states, that all the parties to this transaction resided during the war within the same military lines, and within a few miles of each other and were subject to and recognized the same government.   And this was proved by the evidence taken in the cause afterward.   The answer denies that there were seven hundred and eighty acres of land sold by the commissioner.   No proof was taken as to the quantity; and the answer was not sworn to.   The court decided against the allowance of such an abatement of interest during the war and by its decree applied the credit of four thousand two hundred and twenty-six dollars and eighty cents first to the payment of interest due at the time this credit was given.   On the 8th day of May the court permitted George P. Tracey, one of the children of Zolman Tracey, to file an amended answer against the protest of the defendants, the Shumates, on the ground that he had arrived of age since the last term.   The objection to this answer was, that it was in the nature of a cross-bill and set up new matter not contained in the original bill..   This answer claimed, that Edward H. Tracey by his will disposed of only his personal property and died intestate as to his real property except the small tract known as the Maud Hollow tract, and that the residue of his real estate consisted of about two thousand three hundred acres of valuable land; that the father of the respondent, Zolman R. Tracey, died before the testator, Edward H. Tracey, leaving four children, Rhoda, Clara, John E. Tracey and the respondent, George P. Tracey, heirs at law and legatees of Edward H. Tracey; and that his aunt Rhoda Tracey had died intestate and without issue.   The answer admits the execution of the deed of trust, named in the bill, by Edward H. Tracey, and also admits that the statement in the bill about the payment of the four thousand two hundred and twenty-six dollars and eighty cents on March.

10, 1867, by a sale of part of the land, is in part true. The answer alleges, that by the contract the credit was to be applied to the principal first. It claims also an abatement of the interest during the war, alleging that there was an agreement to pay this interest, and that no one had power to so agree for the defendant then an infant. It states that the allegations in the bill about the impropriety of the sale made by the trustee were true, and that the court had properly set aside this sale. And then answering affirmatively, as he calls it, the respondent says, that the land sold by the commissioner for two thousand five hundred dollars was worth six thousand dollars, and that it was error to decree a sale of this land, till the question of the abatement of the war-interest was settled, and that an offer had been made in accordance with the decree of the court to pay the residue of the debt secured by the deed of trust. And then for the first time this answer brings a new question into the case more than three years after the institution of the suit, that is, the answer alleges affirmatively, that the consideration of the deed of trust was usurious, and asks, that the usurious interest may be set off against the demand of the Shumates. The defendant asks that this may be considered as an answer and cross-bill and for general relief. This answer was sworn to.

The defendant also offered at the same time to file a petition, which the court refused to permit him to file. This petition sets out the matters contained in this answer, alleges that the first sale by the trustee, which had been set aside, was made under a fraudulent agreement between Rufus A. Shumate and Edward G. Tracey, by which the compromise was to be violated by the non-payment of the annual interest on the residue of the debt, and then the trustee was to proceed to sell the land and buy it in at a low price, and that Edward G. Tracey was to have the privilege of buying it back by paying the balance of the debt in five years, and it was accordingly sold for only one thousand five hundred and seventy-five dollars; and R. A. Shumate did according to this agreement execute a title-bond for said land to E. G. Tracey. These facts in reference to this sale are proved by the evidence taken in the cause. He claims that he being an infant is not bound by the compromise-contract but that

it is binding on him only so far as he chooses to ratify it. He asks that the Shumates be required to pay a fair price for this one thousand five hundred acres of land, which, he says, is seven thousand five hundred dollars. He also asks that this sale by the commissioner be set aside and the war-interest be abated; and that all the decrees in the cause made by reason of any answer of his guardian *ad litem* be reopened. This petition was sworn to.

The Shumates as executors of Parkinson Shumate and in their own right reply to this answer and cross-bill by denying all its allegations. This answer is sworn to.

About a year afterward on the 10th of May, 1876, Clara Riley, formerly Clara Tracey, a daughter of Zolman H. Tracey, was permitted to file an amended answer, she being now twenty-one years of age, which answer was similar to the answer of her brother George P. Tracey containing the same allegations set out in his answer and in his petition, and asked that it be regarded as an answer and cross-bill. And R. J. Tracey by leave of the court filed his amended answer, which was similar to the answer of Clara Wiley except that it does not allege, that he was an infant, but does allege, that he was not a party to the compromise and is not bound by it, and after making the same allegations, as are contained in the answer of Clara Wiley he further alleges, that before his father, Edward H. Tracey, executed the deed of trust, he had for value received sold and executed a title-bond for fifty acres of land to his son, Edward G. Tracey, which was contained in the one thousand five hundred acres conveyed by him, his mother and sister, Lockey E. Tracey, to the Shumates under the compromise agreement. He claims, that he had purchased this fifty acres of land before Edward G. Tracey claims to have purchased it, and that the title-bond had been transferred and assigned to him. He does not even allege that the Shumates had any notice of this transfer of the title-bond. He asks that this may be considered as a cross-bill, and for general relief, and that he should be allowed by the Shumates a fair price for this fifty acres, which he is willing to take in lieu of the land itself.

The Shumates filed a reply to this answer denying all its allegations.

On November 17, 1876, Addison H. Tracey was given permission to file his answer. It states that he had long since transferred all his interest in the estate of his father, Edward H. Tracey, and in that of his sister, Rhoda Tracey, to his sister, Lockey E. Tracey, as a gift; possibly he had no interest to transfer, as his father had made large advancements to him, but he does by a deed assign his interest in said estates to his sister, Lockey E. Tracey. The object of this was evidently to make him a witness on the question of usury raised by the answers above stated.

When this answer was filed, the defendants George P. Tracey, Clara A. Wiley and R. J. Tracey moved the court to direct an issue to be tried by a jury to ascertain, whether or not the consideration of this deed of trust or any part thereof was usurious, and if so, how much was usurious. But the court by its decree of November 17, 1876, overruled this motion, and by the same decree a commissioner in chancery was directed to make the enquiries, which had been asked to be acted on by a jury, and made his report to the court; and this decree also decided on the admissibility of Addison H. Tracey as a witness and held, that his deposition could be read. The court also permitted the deposition of E. G. Tracey to be read but excluded such portions of it, as related to transactions and conversations had with Parkinson Shumate. The court also permitted the deposition of Anderson Shumate to be read on behalf of the Shumates, the objection to it being that it had been taken a second time without leave of the court.

The proof in the cause in reference to the compromise-agreement was, that shortly before the death of Parkinson Shumate, who died in July, 1866, he had directed the trustee, Wm. M. Stafford, who was his son-in-law to sell the land named in the deed of trust to pay his debt, on which nothing whatever had been paid; that it was advertised for sale by the trustee, the sale to take place on February 17, 1866; that thereupon the plaintiff in this suit, Lockey E. Tracey, her mother, Rhoda Tracey, and her brother, Edward G. Tracey, heirs and devisees of Edward H. Tracey, filed in the circuit court of Mercer a bill of injunction to prohibit this sale, principally on the ground that the consideration of the bond

secured by the deed of trust was usurious; that an injunction was awarded and that Parkinson Shumate filed his answer denying the usury as well as the other allegations in the bill, the bill and answer being each sworn to; that in this stage of the case a compromise was proposed but Parkinson Shumate was then on his death bed and died a few days afterwards; that before his death in the presence of Edward G. Tracey, who on the part of the Traceys attended to the whole of this matter, and of his son Rufus Shumate he stated, that he wanted this matter settled among them and wished his sons, Wm. H. Shumate and Rufus A. Shumate, to take a portion of the land embraced in this deed of trust for the payment of it, and said he was willing to lose part of the interest; that after his death Wm. H. Shumate and Rufus A. Shumate agreed with Edward G. Tracey on March 15, 1867, to take a certain portion of this land and to give a credit on this bond secured by the deed of trust of four thousand two hundred and twenty-six dollars and eighty cents as of that date, and as to the balance of the debt, one thousand seven hundred and six dollars, it was agreed by Wm. H. Shumate and Rufus A. Shumate, who were the executors of their father, Parkinson, and, to whom by his will he had left the bond secured by the deed of trust, that provided the interest was paid annually, they would not forclose the deed of trust for five years; that this contract was reduced to writing, but where it was left, no one remembers; that the lawyer, who drew it, supposing he might have it looked for it but could not find it among his papers; that it was however carried into effect so far that on August 9, 1867, Edward G. Tracey, Rhoda Tracey, widow of Edward H. Tracey and the plaintiff, Lockey E. Tracey, executed to Wm. H. Shumate and Rufus A. Shumate a deed conveying with parol warranty of title about one thousand five hundred acres of this land, on which this deed of trust had been given, the boundaries of the portion conveyed being set out in the deed, and the Shumates credited the bond of four thousand one hundred and ninety-seven dollars and seventy-one cents due April 1, 1860, with the sum of four thousand two hundred and twenty-six dollars and eighty cents as of March 10, 1867.

There is no ground for claiming, that by this agreement

this credit was to be applied to the principal of the bond, except that it was in amount about equal to the principal, exceeding it only twenty-nine dollars and nine cents.

The court by its decree of November 17, 1876, sustained exceptions to so much of the deposition of the lawyer who drew this contract as purported to give the contents of this written contract.

After this compromise no steps were taken in the injunction suit in Mercer circuit court for more than eight years. No decree dismissing the case was entered, when this compromise was made; but the suit was treated by the parties as abandoned, and the plaintiff in the bill in the present case does not allude to it at all or set up that the sale made by the trustee on May 9, 1868, was in violation of this injunction, which she tacitly treated as abandoned. Nearly all the evidence given on the question, whether there was usury in the bond secured by this deed of trust was given by the defendants, Edward G. Tracey and Addison H. Tracey, but there are two other witnesses, who certify, that they heard Parkinson Shumate say, that he had loaned Edward H. Tracey and his sons money at twenty per cent., but what amount of money was so loaned was not stated, and the whole of this bond was not for money loaned, and how much of it was, the evidence does not disclose. A large part of this bond was for debts which had been contracted by his sons, and on some of these judgments and executions had issued and the then sheriff says, that Parkinson Shumate advanced the amount necessary to pay off these executions in bonds of other persons, and as the money was not realized from these bonds speedily, Parkinson Shumate bought afterwards the bonds at a discount, the sheriff thinks of fifteen per cent. This is supposed to have been included in the bond afterwards given by Edward H. Tracey secured by this deed of trust, but the amount is uncertain.

But I deem it unnecessary to state in detail the evidence on this subject, which is voluminous but very indefinite in its character. The commissioner, to whom this subject was referred for investigation, in his report of May 8, 1877, says: "Your commissioner regrets exceedingly, that the evidence in this cause is so unsatisfactory, as to make any report made

thereupon inconclusive and probably, *very* probably, incorrect. This report is certainly not satisfactory to your commissioner, and he has no hope it will meet the views of either of the parties to this suit, or that it has anything in it to recommend it to your Honor." * * * * * * * *
"Under the circumstances it has been impossible to ascertain with any certainty the questions submitted to your commissioner for examination. While the testimony unequivocally shows usury in the various (at least in some of the various) loans admitted by the parties to have been made by the father of the defendants, the Shumates, to E. H. Tracey, yet it totally fails in nearly every instance to give the usurious premiums with sufficient certainty to enable accurate computation of such excess."

These views of the commissioner are just deductions from the evidence, yet he undertakes to make out two different statements based on two different views. In one of these he finds the usurious interest to be six hundred and fifty-four dollars and fifty-nine cents, and in the other, three hundred and forty dollars and ninety-two cents.

To this report of the commissioner a number of exceptions were filed by the attornys for the Traceys. The evidence proves, that George P. Tracey, when he filed his amended answer, was twenty-one years and five months old, and that Clara A. Wiley, when she filed her amended bill, was twenty-one years and three months old, and that the two other children of Zolman R. Tracey were one and two years older than George P. Tracey.

On May 25, 1877, Wm. H. Shumate and R. A. Shumate asked leave to file an amended and supplemental answer to the cross-bill of George P. Tracey; but the court by its decree of that day refused to permit it to be filed. This supplemental answer states, that on March 7, 1868, the suit was instituted referred to hereinafter in the decree of May 30, 1877, and this amended answer sets out the bill and answer and the entire record in said suit in minute detail and there is filed with it a full copy of the record including the final decree dissolving the injunction and dismissing the bill at the cost of the plaintiffs. And the respondents aver, that the said decree is in full force not in the least reversed, satis-

fied or made void, and that the subject-matter, so far as it relates to the charge of usury embraced and contained in the said answer and cross-bill of the said George P. Tracey, is the same subject-matter and charge, that is contained and embraced in said chancery cause of Rhoda Tracey, Lockey E. Tracey and Edward G. Tracey against the said Parkinson Shumate and others, and the same parties and their privies are parties to this cause, in which this cross-bill is filed, and that the charge of usury in that suit is the same as in this; and that in said first suit it was fully adjudicated, settled and determined by this decree of May 7, 1875. And the said Wm. H. Shumate and Rufus A. Shumate here plead and rely upon said adjudication in bar of the relief asked and prayed for by the said George P. Tracey in the said answer and cross-bill upon the question and matter of usury therein charged. Upon the evidence and this state of the record the circuit court of Mercer rendered its last decree in this cause as follows:

"This cause came on again on this 30th day of May, 1877, to be heard upon the papers formerly read herein, upon the report of trustee and special commissioner, William M. Stafford, of the sale of the land in the bill and proceedings mentioned under a decree in this cause of —— day of ————, 187—, together with the purchase-money bonds taken by him at said sale, with exceptions to said report by Lockey E. Tracey and the heirs of E. H. Tracey, deceased, upon the report of L. M. Stinson and William M. Reynolds, commissioners appointed by a former decree of this court to assign the dower of Rhoda Tracey, widow of E. H. Tracey, in the land in the bill and proceedings mentioned, to which report there are no exceptions, upon the report of Commissioner Robert C. McClaugherty, with exceptions thereto, and upon the depositions of witnesses, and was argued by counsel. Upon consideration whereof, the court is of opinion that there was, during the lifetime of Parkinson Shumate, the ancestor of the defendants, Wm. H. and R. A. Shumate, a suit pending in this court, instituted by the plaintiff, Lockey E. Tracey, and the defendants, Rhoda Tracey and E. G. Tracey, to which all the heirs and devisees of said E. H. Tracey, who are parties to this suit, were made parties either

as plaintiffs or defendants against said Parkinson Shumate, in which suit he, the said Parkinson Shumate, was enjoined from enforcing the deed of trust referred to in this suit, upon the ground, among others, that the debt secured in said trust-deed was usurious, and that that suit was compromised and adjusted by the said Rhoda Tracey, Lockey E. Tracey and E. G. Tracey, on the one part, and the said Wm. H. and R. A. Shumate, on the other, by which they agreed to sell to the defendants, Wm. H. and R. A. Shumate, a portion of the land conveyed in said deed of trust, and by said agreement said injunction was virtually dissolved; that said agreement and compromise as between the parties thereto is binding, and was a compromise of the matters litigated in that suit, and that such matters cannot now be considered in this suit as to the parties to that compromise, but that said agreement should be held firm and stable. The court is further of opinion that the interest of Addison H. Tracey in the estate of his father, E. H. Tracey, was owned by the plaintiff, Lockey E. Tracey, and that that interest is also adjusted by the compromise. It is further of opinion that the defense now set up of abatement of interest during the period of the war, and of usurious interest, ought to have been made to that bill and not to this. The court is further of opinion that the interest of Rowland J. Tracey, who was an adult, but who was not a party to said compromise, and that of George P. Tracey and Clara A. Wiley, who were infants at that time, in any event would be small in the abatement of the usurious interest, and that possibly on a settlement of the estate of E. H. Tracey, would be worth nothing at all, and to rip up said compromise and have the estate of E. H. Tracey settled so far as to define those interests exactly to result in almost endless litigation, but the said Rowland J. Tracey and George P. Tracey and Clara A. Wiley, having claimed in their respective answers that they were not bound by said compromise, the court, although satisfied that said compromise was for the best interest, not only for the said Rowland J. Tracey and George P. Tracey and Clara A. Wiley, but for the other heirs of E. H. Tracey, is of opinion, by way of concession, that the bond secured in the trust-deed from E. H. Tracey to Stafford, trustee, should be credited for usurious

interest with the sum of two hundred and fifty dollars, as of the date of said deed, said sum being more, as appears by the record in this cause, than the aggregated interests of said Rowland J. Tracey, George P. Tracey and Clara A. Wiley under the will of said E. H. Tracey, deceased.

"The court is further of opinion that the sale made by Stafford, trustee and special commissioner, was a fair one, and that at said sale, the land sold brought a fair price, and that said sale should be affirmed. It is therefore adjudged, ordered and decreed that the report of Commissioner McClaugherty be rejected; that the exceptions to the report of sale made by commissioner and trustee, William M. Stafford, be overruled, and said report and the sale therein reported to Rufus A. Shumate be and the same is hereby confirmed, and that the plaintiff, Lockey E. Tracey, recover of the defendants, William H. and R. A. Shumate, her costs by her expended up to the date of the decree setting aside the sale made under the said trust-deed, including an attorney's fee of fifteen dollars. It is further adjudged, ordered and decreed that so much of the answers of Rowland J. Tracey, George P. Tracey and Clara A. Wiley, as set up new matter and claim affirmative relief be dismissed, except as to the two hundred and fifty dollars hereinbefore provided for, and that out of proceeds of the sale of the tract of land sold by Stafford, trustee and special commissioner, there be paid—

"First, the expenses of the sale.

"Secondly, the costs expended by the defendants, William H. and R. A. Shumate, in the defence of the new matters set up in the answers of Rowland J. Tracey, George P. Tracey and Clara A. Wiley, respectively, including an attorney's fee of fifteen dollars, and including the costs of Commissioner McClaugherty, and the costs of Commissioners Stinson and Reynolds in assigning the dower to defendant, Rhoda Tracy, and also the costs expended by defendants, Wm. H. and R. A. Shumate, in the defence of the bill of Lockey E. Tracey after the time of the rendition of the decree setting aside the sale under said trust-deed.

"Thirdly, pay to the defendants, Wm. H. and R. A. Shumate, the sum of two thousand one hundred and seventy-

seven dollars and fifty cents, that being the residue of the bond secured in said trust-deed, after deducting, for usurious interest as of the date of the trust-deed aforesaid, the sum of two hundred and fifty dollars as aforesaid, one hundred and twenty dollars paid the 10th day of June, 1861, and four thousand two hundred and twenty-six dollars and eighty cents as of the 10th day of March, 1867, and the residue of said purchase-money, if any, pay over to the executors of E. H. Tracey, deceased, for distribution among the devisees of E. H. Tracey, deceased; and said trustee and special commissioner, Stafford, is directed, upon the payment of the purchase-money-bonds aforesaid to William M. Stafford, trustee and special commissioner, he shall, as such commissioner and trustee, convey the tract of land mentioned in the proceedings in this cause and referred to in his report to R. A. Shumate, with covenants of special warranty of title; and said trustee and special commissioner, Stafford, is directed to collect the purchase-money-bonds, and pay the same as hereinbefore directed. And there being no exceptions to the report of Commissioners Stinson and Reynolds, assigning the dower in the land in the bill mentioned, it is further adjudged, ordered and decreed that said report be and the same is hereby confirmed; and it appearing to the court that in the decree rendered in this cause on the ―― day of ――, 18―, directing John A. Douglass to convey the interest of the heirs-at-law of E. H. Tracey, deceased, in what is known as the compromise lands to said Wm. H. and R. A. Shumate, the name of Minerva A. Dean was casually omitted, it is further adjudged, ordered and decreed that said Douglass, who is appointed a commissioner for the purpose, convey to said Shumates the interest of the said Minerva A. Dean in said lands, with special warranty of title. Before receiving any money under this decree, said trustee and special commissioner, Stafford, shall execute and file with the papers of this cause, with security to be approved by the clerk of this court, a bond in the penalty of three thousand dollars, conditioned according to law. And a writ of possession is awarded the said Wm. H. and R. A. Shumate to put them in possession of said land sold by said Stafford, trustee and special commissioner, *other* than the

widow's dower, but the execution of said writ is suspended till the 1st day of November next; but this decree is in nowise to prejudice the rights of Rowland J. Tracey as to any claim he may have to the fifty acres of land referred to in his answer in this cause. In the trial of this cause, and while James M. French, attorney for George P. Tracey and others, was concluding the argument of same, he tendered the petition of John E. Tracey (in the words and figures following, to-wit), and offered to file the same. To the filing of which defendants Shumates objected, and said objection was sustained by the court."

The report of S. M. Stinson and Wm. M. Reynolds, commissioners appointed by the former decree of this court to assign dower to Rhoda Tracey, widow of E. H. Tracey, to which report there is no exceptions, has not been copied in the record before us. The suit pending in the circuit court of Mercer instituted by the plaintiff, Lockey E. Tracey, and the defendant, Rhoda Tracey and E. G. Tracey, to which all the heirs and devisees of E. H. Tracey, who are parties to this suit, were made parties either as plaintiffs or defendants against Parkinson Shumate, in which suit he, the said Parkinson Shumate, was enjoined from enforcing the deed of trust referred to in this suit, upon the ground among others that the debt secured in said deed of trust was usurious; is copied at length in this record, and its contents are accurately stated in said decree, excepting that perhaps the inference might be drawn from said decree, that the injunction awarded in said cause had not been formally dissolved, while the record in that cause shows that it was dissolved. The final decree in that cause was entered on May 7, 1877, and is as follows :

"This cause came on again this day to be heard upon the plaintiffs' bill, the answer of Parkinson Shumate, with replication thereto, and said bill was taken for confessed as to the rest of the defendants, and was argued by counsel. Upon consideration whereof, it is adjudged, ordered and decreed that the injunction awarded in this cause on the 12th day of February, 1866, be dissolved, and the plaintiffs' bill be dismissed at the costs of the plaintiff, including an attorney's fee of twenty dollars, but without damages."

This decree is headed as if Rhoda Tracey alone was plaintiff; but the date of the injunction awarded in that cause February 12, 1866, identifies this suit with the one referred to in the last decree in the cause before us. The injunction is dated on that day and enjoined Wm. M. Stafford, Parkinson Shumate and all others from further proceeding to execute the trust-deed mentioned in the bill until the further order of the court. And the trust-deed therein mentioned is the same one mentioned in the bill in the cause before us. The injunction-bond required by this order was given.

Upon the petition of Lockey E. Tracey, George P. Tracey and Clara A. Wiley, an appeal and *supersedeas* was allowed by this Court to the decrees in this cause of date October 18, 1873; October 20, 1873; May 8, 1875; November 17, 1876, and May 30, 1877. In this petition twenty-three errors are assigned.

*J. W. Davis, James M. French* and *Thomas J. Mensey* for appellants.

*James D. Johnston* for appellees.

GREEN, JUDGE:

The first decree in this cause claimed to be erroneous is that of October 18, 1873. This decree set aside the sale made by the trustee on May 9, 1868. This action of the court, as shown by the decree, was based on depositions, which have not been copied into the record, as they should have been; but from what is incidentally proven in the cause subsequently, I infer that there is a strong probability that the omitted deposition fully justified the court in setting aside the sale. I should have deemed it necessary for this Court of its own motion to issue a writ of *certiorari* requiring the clerk to send up these omitted portions of the record, if the counsel in the cause before this Court in their argument had not all in effect admitted the correctness of this decree in this respect. It was what the appellants asked in their pleadings, and what the appellees all asked in their pleadings, so far as they pleaded at all, except the two Shumates; and they by their counsel have strenuously insisted in argument, that

there was no error of any sort in this decree of October 18,
1873. Under these circumstances I have deemed it unnec-
essary to delay the decision in this case by having such writ
of *certiorari* issued, and regard this portion of the decree as
admitted by all the appellants and appellees to be correct.

The court in this decree also decides, that this parcel of
land, which it decreed to be re-sold, was subject to the
widow's dower. This is not disputed by the appellants, but
they insist, that the court ought to have it laid off by metes
and bounds, before it was ordered to be re-sold. The appel-
lees' counsel, while very feebly claiming that the widow had
waived her right of dower, insist that it was not necessary to
lay the land off by metes and bounds, before it was ordered
to be sold, and claim that under section 12 of chapter 65 of
Code of West Virginia, page 445, she was not entitled to
have her dower laid off by metes and bounds at all, as the
giving of the deed of trust by her husband was an alienation
by him within the meaning of this section. But the court of
appeals of Virginia has long since settled this question in
*McCauley* v. *Dismal Swamp Co.*, 2 Rob. R. 507, in which the
court held, that when a husband makes a deed of trust con-
veying land to a trustee to secure debts, and the husband re-
mains in possession till his death, no sale by the trustee being
made in his lifetime, the husband is to be considered as hav-
ing died seized of the land subject to the deed of trust, so
that the widow, if she did not join in the deed of trust, is en-
titled to dower in like manner, as if the deed had not been
made; and therefore of course she has a right to have her
dower assigned her in kind and by metes and bounds. This
right the widow in this case has never waived; nor is there
any just ground for claiming that she has waived her right of
dower. On the contrary her right seems to have been ad-
mitted, when she was permitted to remain in possession of
the land, till this suit was brought. Her right to dower still
continued, unless she had been deprived of it by a jointure
for her in her husband's will. The will of her husband gave
to her "a sufficiency to maintain her during her natural life."
The record shows, that the testator left a small personal
estate consumed in the payment of his debts and funeral ex-
penses, a small parcel of land known as the Maud Hollow

Place, worth but little more than five hundred dollars and a large tract of land principally wild containing about two thousand acres worth some six or seven thousand dollars, on which was a deed of trust to secure a debt amounting when the will was made and the testator died to about four thousand three hundred dollars. He gave by his will specific legacies to his children amounting to about one thousand four hundred dollars; and then the will provides after the paying of these legacies: "If there be a remainder, I desire it equally divided between my children named."

The Code of West Virginia chapter 65 section 4 page 443 provides, that "if any estate real or personal intended to be in lieu of her dower shall be devised for the jointure of the wife, such devise shall bar her dower of the real estate." The question then is: Was this provision of the will in her favor *intended* to be in lieu of dower? If so, she is not entitled to dower; otherwise, she is. In ascertaining this intention, as in any other case in seeking the intention of a testator, we have a right to look to the situation of the testator and the circumstances surrounding him, when he wrote the will. See *Ambler* v. *Norton*, 4 H. & M. 23. From the pecuniary circumstances of the testator, when he wrote his will, he must have known, that the value of his widow's dower in all his real estate would considerably exceed the entire value of his real and personal estate after the payment of his debts, and that in fact his debts were, as he well knew, so large, that after the payment of them the estate left, out of which, if she abided by the will and gave up her dower, she would have received her support during life, would have been so small, that she could not possibly have received such support from it. He could therefore hardly have intended this inadequate provision for her to have been in lieu of her dower, as the value of her dower, he must have known, greatly exceeded the value of this inadequate provision, a provision rendered inadequate by reason of his large indebtedness, an indebtedness, he well knew, when he wrote his will, as a large part of it was a single debt secured by a deed of trust executed less than six months before his will was written and he died. As a testator by his will is supposed to bestow bounties, it can hardly be supposed, that he intended this

provision in his will for his wife to be in lieu of her dower, when he must have known, that her dower was worth to her far more than this provision and indeed more than his whole estate after the payment of his debts. Had he not owed this large debt secured by this deed of trust, this provision might perhaps have been regarded as a provision intended by him to be in lieu of her dower; but under the circumstances existing in this case the circuit court did not err in giving to this will the construction, that this provision for his wife was not *intended* by the testator to be in lieu of her dower. The court therefore did not err in deciding, that she was entitled to dower in kind in the land, which it ordered to be sold. I am confirmed in this opinion, that she was entitled to dower in this land from the fact, that neither the appellants nor the appellees have argued before this Court, that this provision in the will was a jointure.

The next enquiry is: Did the court err in not laying off her dower by metes and bounds, as the appellants insist, before it ordered a sale of this land? There has been no express decision in Virginia that I know of on this point; but upon a principle analogous to that acted upon and recognized in *Coles' Adm'r* v. *McRae*, 6 Rand. 644, *Cralle* v. *Meene*, 8 Gratt. 496, *Buchanan* v. *Clark*, 10 Gratt. 164, *Iaege* v. *Boissieux*, 15 Gratt. 83, *Howery* v. *Helms*, 20 Gratt. 1, and *Lipscomb* v. *Rogers*, 20 Gratt. 658, it would seem necessary before a sale is made, that the dower of the widow should be set out, so that a purchaser may know, what part will pass at once into his possession, and what not until her death, or that a valid arrangement be first made dispensing with her right to have dower in kind in the land. These views have been very properly, I think, regarded and acted upon as law in this State. See *Laidley* v. *Kline*, 8 W. Va. 229; *Underwood's Ex'r* v. *Underwood's Heirs*, *supra*. The circuit court therefore erred in the decree of October 18, 1873, in directing the sale of this land, before it had by metes and bounds assigned the widow's dower; and had the appellants appealed before the sale made under this decree had been confirmed, this decree must have been reversed. But § 8 of ch. 133 of Code of West Virginia p. 630 provides, that "if a sale of property be made under a decree or order of a court, and

such sale be confirmed, though such decree or order be after-
wards reversed or set aside, the title of the purchaser shall
not be affected thereby; but there may be restitution of the
proceeds of sale to those entitled."

In construing the above statute this Court has determined,
that, if before the confirmation of a sale the report of sale be
excepted to, on the ground that the decree ordering the sale
is erroneous, and it clearly appears to the court, that the sale
of the land was materially affected thereby, and that it
brought materially less than it otherwise would have brought
by reason of this error in the decree of sale, the court should
refuse to confirm the sale; and if it be confirmed, the Appel-
late Court will reverse the decree confirming the sale as well
as the decree ordering the sale. See *Trimble's Adm'r* v.
*Herold*, 20. W. Va. 602.

The land in this cause was sold under this erroneous de-
cree of October 18, 1873, and at the sale Rufus A. Shumate be-
came the purchaser; but there was no exception to the report
of the sale because of this error in the decree ordering the
sale, nor was there any proof or even allegation, that the
land brought materially less by reason of this error, or that
any person was prevented from bidding because of an unwill-
ingness to purchase the land subject to the widow's dower,
before it had been assigned to her by metes and bounds. And
as the circuit court confirmed the sale, we can not for this
reason set aside this sale nor in this respect reverse the de-
cree of October 18, 1873, for this error. It has in effect been
waived by the parties interested, all failing to take an appeal
before the confirmation of the sale made under this decree
and failing to object to confirmation of this sale because of
this error, or to prove that the sale was in any degree preju-
diced by this error. It would seem too that under the effect
of this law, as construed by this Court, it is almost idle to
consider further, whether there was any error in this decree
of October 18, 1873, ordering this sale. For the sale under
it being excepted to for no error in the decree, and no
proof having been offered showing that the land was sold for
any less by reason of any error in the decree, if we hold that
the confirmation of the sale was proper in other respects we
can not for such error reverse this decree ordering such sale.

All errors in it would have to be regarded as cured or waived by this conduct of the appellants and of all others. But we will say, that we find in this decree but one other possible error, even had it been appealed from before the confirmation of the sale made under it, that is, the failure of the court to require a bond of the commissioner, as required by law. But as the law then was, the commissioner was not required to give such bond before the sale; and the sale was not excepted to on that account, and there is no reason to believe, that the land sold for any less because of this omission.

In the argument of the counsel for the appellants other errors in this decree of October 18, 1873, were claimed to exist, as for instance, that the amount due on the deed of trust was not first ascertained. This is simply a mistake of the counsel; the bill stated distinctly the amount, and the answer admitted that the amount stated in the bill was correct. This amount was four thousand one hundred and ninety-seven dollars and seventy-one cents with interest from April 1, 1860, subject to a credit of four thousand two hundred and twenty-six dollars and eighty cents as of August 9, 1867. It is claimed too, that it was error to decree the sale of the whole land. The sale when made showed, that all of the land was required to be sold in order to pay the lien upon it. Of course it was proper in such case to order the sale of the whole tract of land. One of the appellants, Lockey E. Tracey, in her bill asks the court to direct a sale of said lands upon such terms, as may to the court seem equitable, and proper, and yet her counsel complains, that this land was sold by the court on credits instead of for cash, as the deed of trust required. The interest of the other appellants was the same in this respect as hers, and this sale being made on credit was obviously promotive of their interest, and they can not complain thereof. There is no error in this decree of October 18, 1873, for which it can be reversed.

But on October 25, 1873, the court rendered a decree appointing John A. Douglass a commissioner to convey to the Shumates the interest of all the defendants other than those who joined in the deed of August 9, 1867, in the land named in that deed known as the compromise land, omitting only Minerva Dean by mistake, which was corrected in the decree

of May 30, 1877.   Most of these interests in the one thousand five hundred acres of land thus ordered to be conveyed belonged to infants, and the court assumes, that they held simply the legal title to this land, and that the compromise and deed of August 9, 1867, conferred on the Shumates the equitable title to this land.   I cannot see how it did.   None of these parties, whose interest are thus summarily ordered to be conveyed to the Shumates, were parties to either this deed or this compromise, and we do not know from this record, that any of them but one had any knowledge of this compromise till after it was made.   How then can they, and especially the infants, be compelled to convey their land because of this compromise ?   The only ground, on which it is claimed that this interest ought to be thus conveyed to the Shumates against their protest is, that the entire tract of one thousand five hundred acres had been sold by others with general warranty of title, and they had received the full benefit of the entire consideration paid for all the land by having the full amount put as a credit upon a bond, which was secured by a deed of trust on this entire one thousand five hundred acres, including their interest in the same.   It is claimed, that it is unjust that they should have the full benefit of this payment, and yet retain their interest in the one thousand five hundred acres of land.   This is true ; and if the infants think proper to sue for their interest and do recover the same of the Shumates, they will of course have their redress by holding the grantors in the deed of August 9, 1867, responsible on their warranty, and these grantors to the extent that they are thus required to pay to the Shumates could, I presume, enforce this amount against the interest of those who have recovered their share in the one thousand five hundred acres of land, as they would be entitled to be substituted to the lien of the Shumates under this deed of trust on their interest in the one thousand five hundred acres of land, and this lien would be considered as still in existence, and as unsatisfied to this extent by the payment made August 9, 1867, as to this extent this arrangement would have been rendered of no effect by the action of the parties claiming and recovering their interest in these lands.   If these rights are enforced in a court of equity, and all per-

sons interested in the question are before the court, I presume, that after the recovery of their interest in this land by these parties or any of them the Shumates upon the general principles of a court of equity would be permitted to enforce to this extent their lien directly on their interest in this land without first making the same by suit out of the grantors in this deed of August 9, 1867, on their warranty of title. All this may be very troublesome, and it is possible, that to avoid it the parties, whose interest, the court has thus decreed to be conveyed to the Shumates, may themselves make such conveyances of their interest, and thus avoid all this trouble. But it seems to me clear, that to avoid this trouble the court could not in this or indeed in any suit order the conveyances of their interests to the Shumates. The object of this suit, as stated in the bill, has no possible relation to the enforcement of such conveyance. The parties, in whose favor this conveyance was ordered, were not even parties plaintiff in this cause, nor could this suit by a cross-bill or in any other manner be so molded as to make it proper for the court to order such conveyance. The decree therefore of October 25, 1873, ordering this conveyance must be set aside, reversed and annulled.

Of the decree of May 8, 1875, both the appellants and appellees complain. The appellants, that George P. Tracey was not permitted to file his petition, as he desired; and the appellees, that he was permitted to file an answer in the nature of a cross-bill and to set up by this answer as a cross-bill matters against his co-defendants, which were in no manner contained in the original bill. If it were proper to file this answer as a cross-bill, which the court allowed, no complaint can be made by him, that he was not at the same time permitted to file this petition; for the same matters are contained in both this petition and answer. If properly presented in the answer as a cross-bill, it would have been wrong to permit them to be again presented in this petition. The main object of this answer, so far as it was asked to operate as a cross-bill, was to set up the new matter not set up in the bill, that is, that the debt secured by the deed of trust, which this court was proceeding to enforce, was tainted with usury, and that as a cross-bill this answer seeks to have this

usurious interest ascertained and set off or credited on this debt.

Assuming for the present, that the defendant, George P. Tracey, was in no manner estopped from setting up this usury and having it credited on this debt, it would seem clear, that he ought to be allowed to do so in some form in this suit. The proper mode of doing it is by no means so clear. Story in his Equity Pleading section 392 says: "It also frequently happens and particularly, if any question arises between two defendants to a bill, that the court cannot make a complete decree without a cross-bill or cross-bills to bring every matter in dispute completely before the court to be litigated by the proper parties, and upon proper proofs. In such a case, it becomes necessary for some one or more of the defendants to the original bill to file a cross-bill against the plaintiff and some or all of the defendants in that bill and thus to bring the litigated points fully before the court." Again in section 396 he says: "Upon hearing a cause it sometimes appears, that the suit already instituted is insufficient to bring before the court all matters necessary to enable it fully to decide upon the rights of all parties. This most commonly happens, where persons in opposite interests are co-defendants so that the court cannot determine their opposite interests upon the bill already filed, and yet the determination of their interest is necessary to a complete decree upon the subject-matter of the suit. In such a case, if upon hearing the cause, the difficulty appears, and a cross-bill has not been exhibited to remove the difficulty, the court will direct, a bill to be filed in order to bring all the rights of the parties fully and properly before it for decision."

This would seem to justify the filing of a cross-bill bringing in this question of usury, as it was not at all mentioned in the bill, and its consideration and determination under the supposition, which we have made, that the parties are not estopped from setting it up, are necessary to a complete decree on the subject-matter of the suit, the foreclosing of the deed of trust; and the issue on this usury question is between the defendant Geo. P. Tracey offering to file the cross-bill, and his co-defendants the Shumates, and not at all between the defendant, George P. Tracey, and the plaintiff,

Lockey E. Tracey. But I am by no means certain whether the law, as thus stated by Story, has any application to a case, where the matter in controversy between co-defendants is a matter, in which the plaintiff has an interest identical with the defendant, who asks to file such cross-bill, and where this matter could have been properly introduced into the original bill, or, if it had not been so introduced, could have been introduced into an amended bill. But it may be said, that the omission of the plaintiff to put this matter in his original bill or in an amended bill ought not to prevent the co-defendant, having a like interest with the plaintiff, from bringing it into the suit, and he could do it only by a cross-bill. But is it clear, that he could do it only by cross-bill or, that that is even the appropriate means of doing it? In 1 Daniel Ch. Pr. (5th Am. ed.) 141, note 1, it is said: "All persons having the same standing should stand on the same side of the suit; but if any such refuse to appear as plaintiffs they may be made defendants their refusal being stated in the bill." Now the plaintiff and George P. Tracey, the persons who were seeking to file this cross-bill, are both appellants in this Court, and are both insisting on this usury in the consideration of the bond secured by the deed of trust. Under the rule above laid down they should have been co-plaintiffs with others having the same interest, and then this question about usury would have been set up in the bill or an amended bill, and the Shumates could have answered the charge. This was certainly the appropriate mode of bringing it into this cause. But George P. Tracey not being a co-plaintiff, when he offered to file this cross-bill what could he do except this, if this question of usury was to be brought into the court at all? Perhaps he ought to have moved the court to be made a co-plaintiff instead of a defendant, as he was made, and when made a co-plaintiff, perhaps his proper course would have been to ask to file an amended bill bringing in this question of usury. But it may be, that the suit had progressed too far to permit the introduction of this new question into it either by cross-bill or by an amended bill.

I have not examined the authorities referred to in Story and Daniel with a view of determining these questions, as on a careful examination of this case I am satisfied, that the de-

fendant, George P. Tracey, as well as all the other parties to this cause, was estopped from relying on usury in the consideration of the debt secured by the deed of trust, as I will hereafter show.  And this being the case, it is unnecessary to trouble ourselves about the manner, in which this question has been brought into the record, or about the time, at which it was introduced.  It could have availed nothing had it been ever so properly in the cause.  We shall therefore disregard the manner, in which it has been introduced into the cause, and shall regard as not erroneous for the purposes of this suit the decrees of the circuit court permitting this and similar cross-bills to be filed by the defendants.

I will now consider the question, whether the defendants, the representatives of E. H. Tracey, are estopped from setting up, that the consideration of this bond secured by the deed of trust was usurious.  It was in effect decided, that they were so estopped by the decree of the circuit court rendered on May 30, 1877.  The record shows, that on February 12, 1866, the judge of the circuit court of Mercer county granted an injunction restraining and inhibiting Wm. M. Stafford, Parkinson Shumate and all others till the further order of the court from further proceeding to execute the deed of trust of March 24, 1860, executed by Edward H. Tracey, the same deed of trust, the enforcement of which is the subject of controversy in this cause, on condition that Edward G. Tracey, Rhoda Tracey and Lockey E. Tracey, devisees and heirs of Edward H. Tracey, or some one for them execute bond with good security in the penalty of five hundred dollars conditioned, as the law directs, to be taken and approved by the clerk of the circuit court of Mercer county.  This bond was executed and approved February 17, 1866; and this injunction took effect.

This injunction was awarded on a bill filed by Edward G. Tracey, Rhoda Tracey and Lockey E. Tracey, all parties to this cause.  This bill set forth, as the bill in this cause does, the execution of this deed of trust of March 24, 1860, by Edward H. Tracey; and there was filed with the bill a copy of this deed of trust.  The bill also set forth the death of Edward H. Tracey and his leaving a will, whereby the land conveyed by said deed of trust passed to his devisees and

heirs; and there was filed with this bill as with the bill in this cause a copy of this will to show who were the parties interested in said land, as was done in the bill in this cause. It set out also, as does the bill in this cause, the fact, that the war had occurred, and that the courts in said county were suspended during the war. It states that said debt of four thousand one hundred and ninety-seven dollars and seventy-one cents secured by said deed of trust was usurious to a considerable extent. It set out in a rather vague manner what was the consideration of this bond, alleging that the plaintiffs cannot say at that time to what extent the said debt is usurious, but that they are satisfied that they will be able to show upon a final hearing of this cause that a considerable portion of the same is usurious and unjust. In this bill the plaintiffs also allege that under all the circumstances they are advised that it is competent and proper for a court of equity to interpose its authority and prevent a sale of said lands, it having been advertised for sale by the trustee, and to ascertain what part of said debt embraced in said deed of trust was usurious, and to ascertain the exact indebtedness of the said Edward H. Tracey to said Shumates at the time said trust-deed was executed, and to decree against the heirs of Edward H. Tracey that amount without even legal interest thereon. The bill made all the heirs and devisees of Edward H. Tracey and his executors as well as Parkinson Shumate and the trustee Wm. M. Stafford parties defendants. A portion of the prayer of this bill was that the plaintiffs be relieved from the payment of that portion of said debt of four thousand one hundred and ninety-seven dollars and seventy-one cents, which may be found usurious.

The defendant, Parkinson Shumate, answered this bill; and in his answer he states that there was no usury in the various transactions, which constituted the consideration of the bond secured by said deed of trust, and vaguely states the transactions. This answer asks that the injunction, which had been awarded, be dissolved, and that the bill be dismissed at the plaintiffs' cost. Other facts alleged in the bill as grounds for relief are denied in this answer. This answer is sworn to April 26, 1866.

No other steps were taken in this suit till May 7, 1875,

when a decree was entered, which is set out at length in the statement of the case, whereby this injunction was dissolved and the bill dismissed at the plaintiffs' cost. I deem it unnecessary to state other matters, that were alleged in the bill and denied in the answer; what is above stated is the substance of all that was alleged with reference to the usury claimed in said suit to have been in the bond, which usury the answers in this cause have again attempted to set up in like manner as an off-set or abatement from the said bond. The record in this suit is a part of the record in the cause now before us for review.

A final decree in a chancery cause is just as conclusive as a judgment at law. See *Sibbald's Case*, 12 Pet. 492; as is said in *Smith* v. *Kernochen*, 7 How. U. S.: "A verdict and judgment of a court of record or a decree in chancery puts an end to all points thus decided between the parties to the suit. In this there ought to be no difference between a verdict and judgment in a court of law and a decree in a court of equity. They both stand on the same footing and may be offered in evidence under the same limitations; and it would be difficult to assign a reason why it should be otherwise." It is universally admitted now as laid down in the *Dutchess of Kingston's Case*, 11 Stat. Trials 261, that a judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties or their privies, whenever the existence of the fact is put in issue again between them. And this is so not only when the subject-matter is the same, but when the point comes incidentally in question in relation to a different matter; as is said in *Harris* v. *Harris*, 36 Barb. 88: "An adjudication is final and conclusive not only as to the matters actually determined, but as to every other matter which the parties might have litigated and have decided, as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action both in respect to the matters of claim and of defence." It is not even essential, that the matter should have been distinctly put in issue in a former suit to make it an estoppel. It is sufficient, if it be shown to have been tried and settled in the former suit. The force of a judgment as *res adjudicata* can not be destroyed or

impaired by showing that it is clearly erroneous and ought not to have been rendered. *Case* v. *Beauregard*, 101 U. S. 688. It is true, that a judgment or decree, to be an estoppel, must be a judgment or decree upon the merits; but by a decree upon its merits is not meant on the merits in the moral sense of those words. It is sufficient, that the *status* of the suit was such, that the parties might have had their suit disposed of on its merits, it they had presented all their evidence, and the court had properly understood the facts and correctly applied the law to the facts. *Hughes* v. *United States*, 4 Wall. 232. If either party fail to present all his proof, or manages his case improperly. or afterwards discover additional evidence, or if the court itself blunders, nevertheless the judgment or decree until corrected or vacated in some appropriate manner is as conclusive upon the parties, as though it had settled their controversy in accordance with the principles of abstract justice. Many instances are to be found in the reports, where by reasons of this character abstract justice is defeated by the courts firmly holding, despite the negligence of parties or the blunders of courts, that a former judgment or decree unreversed was an estoppel to all further litigation of the same subject-matter between the same parties or their privies. As examples of this character see *Foltz* v. *Prouse*, 15 Ill. 434; *Stafford* v. *Clark*, 1 Carr. & P. 27; *Morgan* v *Plumb*, 9 Wend. 287; *People* v. *Smith*, 51 Barb. 360; *Regina* v. *Yorkshire*, 1 Ad. & El. N. S. 625.

In the cause before us it is obvious, that the subject-matter, viz: the charge of usury in the transactions, out of which arose the giving of the bond secured by the deed of trust sought to be enforced in this cause, was distinctly in issue in the former chancery suit, and that this former chancery cause was finally determined, and this issue decided on its merits in favor of the defendants, that is, that there was no usury in these transactions, by the final decree of May 7, 1875, dismissing the bill in that cause, which set up this usury. That cause was between some identical parties in the same right and capacity, or their privies claiming under them, and was decided by a court of competent jurisdiction, and its decree on its merits has never been set aside or reversed.

It is therefore conclusive; and the parties are by it estopped from again setting up in this cause this controversy thus determined. See *Bigelow* v. *Winsor*, 1 Gray 299.

I have assumed, that the record in the first of these causes constitute a part of the record in this cause; but this is controverted in argument. It was made or attempted to be made a part of the record first by being referred to in the answer of the Shumates as an exhibit, which answer was sworn to March 12, 1872. But then the final decree in this old chancery cause had not been entered, and though referred to as an exhibit, it seems the copy of the record in this old chancery cause was not actually filed with this answer. But a full copy of this record including this final decree was filed as an exhibit with the deposition of Edward G. Tracey taken on April 28, 1875. A full copy of this record was again filed as an exhibit with a special replication and answer to George P. Tracey's cross-bill, which was tendered by Wm. H. Shumate and Rufus A. Shumate, but which the court refused by its decree of May 21, 1877, against their protest to permit them to file; and it was again referred to by the court in its final decree of May 30, 1877. It appears on the face of this decree of May 30, 1877, that the court referred to and based its decree in part on the record in this old chancery suit, which record was a record of the same court; and according to the decisions in *Craig* v. *Sebrell*, 9 Gratt. page 131 and *Richardson* v. *Donahoo*, 16 W. Va. page 685, this reference in a decree to the record in another suit in the same court makes the record of the suit referred to a part of the record in the cause, in which the decree making such reference is entered. But in this cause this record was made a part of the cause by having been copied in full as an exhibit in this deposition. It was evidently proper for the court to permit the Shumates to rely upon the record of this first suit as an estoppel to any enquiry in this cause into the question of usury; and they proposed formally to rely upon it in the pleadings in the cause, in a supplemental answer to the cross-bill of George P. Tracey, which the court refused to permit them to file by the decree of May 27, 1877. This refusal was based, I presume, on the ground that the court did not deem it necessary, that it should be thus formally re-

lied upon in the pleadings. If the court ought to have permitted this supplemental answer to be filed in order to raise in a proper manner this question of estoppel, this Court would hold the refusal to be error. But it would not send the cause back to permit this formal reliance on this estoppel to be put in the record, but would regard that as done, which ought to have been done, and treat the cause, as if the supplemental answer had been filed. We need not decide therefore, whether the court erred in holding, as it did, that this formal reliance on this estoppel in the pleadings was unnecessary, but will regard the cause as if there had been the formal and proper reliance on this estoppel in the pleadings.

We need not decide, whether the parties were not also estopped by the first chancery suit from asking as an offset an abatement of the interest on this bond during the war, or the question whether the price of the one thousand five hundred acres of land, four thousand two hundred and twenty-six dollars and eighty cents, was to be credited on the bond secured by the deed of trust generally, as was done, or whether it was to be applied by agreement to the extinguishment of the principal leaving nothing but the interest due which therefore no longer bore interest. For the evidence in this cause fully establishes, that these claims of abatement never did have any foundation. The evidence establishes, that the obligee in this bond and the representative of the obligor his heirs and devisees lived during the war in adjoining counties within a few miles of each other and within the same military lines, and of course the obligee could during the war have received, and these representatives of the obligor could have paid, this bond, and not having done so they cannot be exempted from the payment of interest. The facts, that the money loaned was of but little use during the war, and that the courts were closed, are altogether immaterial, as the abatement of interest during a war is not based on such grounds but only on the fact, that the creditor and debtor residing in counties at war with each other could not legally have any intercourse with each other, and the debtor could not legally pay, nor the creditor legally receive, any payment on the debt during the war. See *Walker* v. *Beauchler*, 27 Gratt. 511–517; *Kanawha Coal Co.* v. *Ohio Coal Co.*,

7 Blatch. C. C. R. 391, 408.   The evidence is also clear and conclusive, that there was no agreement, that the price of this one thousand acres of land, four thousand two hundred and twenty-six dollars and eighty cents, should be applied in discharge of the principal of this bond, so that it should bear no interest thereafter.   But it was on the contrary expressly understood, that the balance due should bear interest.   The only ground for such a claim was the fact, that the amount of this credit and the amount of the principal of the bond was nearly the same differing only in twenty-nine dollars and nine cents.

We will now consider the other decrees entered in this cause and ascertain whether they are erroneous according to these views.   There is no error in the decree of May 8, 1875, which is now prejudicial to any of the parties to this cause; and it will therefore not be reversed.   The decree of November 17, 1876, first gave leave to Addison H. Tracey to file his answer and leave was given to reply generally thereto, and Clara A. Wiley and Rowland J. Tracey were allowed to file answers in the nature of cross-bills similar to the answer and cross-bill, which George P. Tracey had been allowed to file.   A motion was made to direct an issue to be tried by a jury to ascertain whether the consideration of said deed of trust was usurious and the amount of the usury.   This was refused by this decree, and the court referred these enquiries to a commissioner in chancery.   Exceptions to the deposition of Addison H. Tracey in reference to this question of usury was overruled, and a portion and only a portion, of the deposition of E. G. Tracey on the same subject was excluded; and the court overruled a motion to exclude the deposition of R. A. Shumate.   There is nothing in any portion of any of this action of the court, which is now, according to the views we have expressed, prejudicial to any of the parties; and it will therefore not be reversed.   As a mere abstract question there was error in this decree; but such errors, according to the views we have taken, are harmless.   The report made by the commissioner on the subject of usury was properly disregarded afterwards in the decree of May 30, 1877; and it being an immaterial enquiry, we need not consider whether the enquiry, had it been proper, should have

been made by a commissioner or by a jury. Nor need we look into the question, whether the court erred in acting on the question, whether these depositions should have been considered as evidence or not. For, according to the views we have expressed, it is immaterial whether they were read or not. The result would be the same in either case.

The last decree of May 30, 1877, first recites the proceedings in the first chancery suit omitting only the final decree by the court on May 7, 1875, dismissing the cause, and in connection therewith recites the compromise of said suit, and holds that the parties to said compromise are estopped thereby from setting up the usury, if any, in the bond secured by the deed of trust executed by Edward H. Tracey, and also the abatement of interest thereon during the war, and that as Lockey E. Tracey, a party to said compromise, then owned the interest of Addison H. Tracey in his father's estate, these questions were as to this interest also adjusted by this compromise and can not be set up. And while this compromise was also for the benefit of all the infant heirs and devisees of Edward H. Tracey, yet, as they may not be bound by this compromise, the court by way of concession credits for usurious interest on said bond, two hundred and fifty dollars, which sum, it says, exceeds the aggregate interest of Rowland J. Tracey, George P. Tracey and Clara A. Wiley under the will of Edward H. Tracey, which interest might possibly be worth nothing at all. This portion of said decree is erroneous and must be reversed. For, as we have seen, all the devisees and heirs of Edward H. Tracey, whether parties to this compromise or not, are estopped by the final decree in said first chancery suit rendered May 7, 1875, from setting up this usury, if there was any; and on the evidence in this cause they are not entitled to any abatement of interest during the war. The court probably did not in this decree refer to this decree in the first chancery suit dismissing it and dissolving the injunction, because from the evidence in this cause it concluded, that the court ought not to have entered this decree. But we have seen it is conclusively binding on all the parties to this cause and on all their privies, as much so as if it had been a proper decree to have been entered, as it is unreversed and has been in no

manner set aside and annulled, and it must therefore operate as an estoppel on all the parties to the present suit, they being all parties or privies to the parties in that suit.

So far as the record in that cause shows, the proceedings in it were regular and proper, and, so far as appears, it could not have been reversed on appeal; and if there be error in entering this decree, that error is only disclosed in this suit, not in that. But even if this decree had never been entered or had been set aside in a proper proceeding for that purpose, after this great lapse of time and the apparent acquiesce by all parties in the abandonment of the claim set up in said suit, that there was usury in the transactions, out of which arose the giving of this bond and deed of trust, the court would have held, that it was too late to make an enquiry into this question; and it would obviously at this late day be impossible to do justice to the parties or to ascertain the real character of the consideration of this bond, as these transactions were evidenced by no writings but depended entirely on parol evidence in relation to transactions more than twenty years old, transactions too occurring between parties, both of whom had been dead many years. The utterly unsatisfactory character of such an enquiry is well illustrated by the effort made by the court in this cause, which it subsequently abandoned. And in lieu of it substituted a mere guess of its own, which was probably as reliable as any result, which could then have been reached by the most careful examination. Even had the parties to this suit not been estopped from making this enquiry by the decree of May 7, 1875, in the first chancery suit, the court should have refused to permit any of them to rely on this alleged usury, because it was not set up till so long a time after these transactions occurred, that it had become impossible to do justice by such investigation.

The next provision in this decree of May 30, 1877, is an overruling of the exceptions to the report of sale of the commissioner, Wm. M. Stafford, and the confirmation of the sale. The court did not err in this. There were but two exceptions to this report, one was that this land sold at a grossly inadequate price. It sold for two thousand five hundred dollars. What the quantity of land was does not appear. The deeds

for this land which is perhaps the most reliable evidence of the quantity which appears in this cause would show that there were about five hundred acres in the land sold. Some of the heirs of Edward H. Tracey, parties interested, assert that there were in it seven hundred and eighty acres; but they do not say how they had so estimated it, as the deeds called for less, and they do not assert that it had been surveyed. I do not think much weight can be given to their statement of the quantity of this land. Had they deemed it important, they ought, when they filed this exception, to have sustained their statement by some satisfactory evidence, which was so easy to be obtained. If the quantity of land sold was five hundred acres, it sold at five dollars per acre; if seven hundred and eighty acres, it sold at three dollars and twenty cents per acre. The witnesses differed in their estimate of the value of this land from two dollars to ten dollars per acre. This great difference itself shows how little value should in this case be put in the estimate of witnesses as to the value of the land. The seven witnesses of the exceptants on an average valued this land at eight dollars per acre; the four witnesses of the purchaser valued it at less than three dollars on an average. All of these valuations were made of the land itself unencumbered, while it was sold encumbered by the widow's dower. It is obvious, that from this evidence the court cannot say, that the land did not sell for its full value, and certainly we cannot say it sold at a grossly inadequate price. This sale was made January 3, 1874, and was not confirmed till May 30, 1877, a period of more than three years; and during all that time the parties, who were objecting to the confirmation of this sale, had the opportunity of looking up some purchaser willing to make an advance bid. Their failure to find one ought itself to have satisfied the court, that this land sold at a fair price.

The other exception to this report is, that the decree ordering the sale directed this land to be sold to pay the residue of the debt secured by the deed of trust. At the time this decree was entered, there was no sort of controversy about the amount of the debt; it was stated expressly in the bill, that it was four thousand one hundred and ninety-seven dollars and seventy-one cents with interest trom

April 1, 1860, subject to a credit of four thousand two hundred and twenty-six dollars and eighty cents as of March 10, 1867. The answer did not deny but on the contrary admitted the truth of this statement in the bill. After this decree was made, some of the heirs and devisees of Edward H. Tracey set up the pretense, that this debt was subject to a further off set, because the interest during the war ought to be abated, and because this four thousand two hundred and twenty-six dollars and eighty cents ought to be first applied to the principal as a credit, instead of being applied as payments are usually applied, first to the payment of the interest. And because the commissioner did not state to them, when called on, the amounts due on the deed of trust on such a basis of calculation, they except to the report of the commissioner of the sale and to the sale itself, alleging that he would not state to them the balance due on said deed of trust. They could have calculated this balance for themselves from the admissions in the pleadings in one minute's time. This of course was no valid exception to said sale and report. The court therefore did not err in overruling these exceptions and confirming this report.

In this connection the court very properly added a provision, I suppose accidentally omitted in the decree of sale, that is, a provision requiring the special commissioner, before he should receive any of the purchase-money of this land to execute, as required by law, a bond in the penalty of three thousand dollars.

The next provision of this decree is a rejection of the report of the commissioner on the subject of the usury in the bond secured by the deed of trust. There was no error in this, as this order of reference to him ought not to have been made. The decree with reference to the payment of costs seems just and right. The next provision of said decree is that so much of the answers of Rowland J. Tracey, George P. Tracey and Clara A. Wiley, as sets up new matters and claims affirmative relief, be dismissed except as to the two hundred and fifty dollars before allowed on account of usurious interest. These answers, so far as they operated as cross-bills, ought to have been absolutely dismissed without any modification or exception. The decree then proceeds to

distribute the fund arising from this sale. The first two of these directions are right. The third and last of these directions is erroneous only in the amount due to Wm. H. Shumate and R. A. Shumate on said deed of trust, and the only error in it is deducting this two hundred and fifty dollars as usurious interest from this bond as of its date. The deduction of one hundred and twenty dollars as of June 10, 1861, is correct. It is true the bill set up no claim that this one hundred and twenty dollars had been paid on June 10, 1861, and the answer of the Messrs. Shumate makes no mention of it, yet it is admitted by the counsel of said Shumates in this Court to be correct, and it was evidently always admitted by them to be just, for in their answer they stated, that the amount of interest due on said bond on August 9, 1867, was estimated to be about one thousand six hundred dollars; if this credit of one hundred and twenty dollars is allowed the exact amount of this interest would be one thousand six hundred and twelve dollars, whereas if this credit was not allowed, the debt would have been one thousand seven hundred and thirty-two dollars. It was stated in the bill to have been about one thousand seven hundred dollars as of March 10, 1867, which obviously was a calculation based on the casual omission of this credit of one hundred and twenty dollars, which it would appear was never controverted. And as after the payment of the amount due to the Shumates there will be no surplus left, that portion of this decree directing this surplus to be paid to the executors of E. H. Tracey might properly be omitted. This decree then proceeds to order on the collection of the purchase-money a deed to be made to the purchaser. There being no exceptions to the report of the commissioners laying off the widow's dower, it is confirmed. There are no errors in these provisions of said decree. The next provision directs that John A. Douglass as a special commissioner convey the interest of Minerva A. Dean with special warranty of title in the one thousand five hundred acres known as the compromise lands to Wm. H. Shumate and R. A. Shumate, this direction being casually omitted from the decree of October 20, 1873. This decree of October 20, 1873, as we have said, ought never to have been made; and for the reasons we

have given therefor this provision, ought not to have been inserted in this decree of May 30, 1877, and it must be reversed and set aside. A provision is then inserted in this decree awarding a writ of possession of said land purchased to Wm. H. and R. A. Shumate. ' Rufus A. Shumate alone was the purchaser of this land, and this writ of possession should have been awarded to him alone. This decree then provides that it shall in no wise prejudice the rights of Rowland J. Tracey as to any claim he may have to the fifty acres of land referred to in his answer in this cause. This was proper, for this claim could not properly be brought into this cause, it being a matter foreign to the objects of this suit. There was no error in the rejection of the petition of John E. Tracey, both because of the time it was introduced, and because it was unnecessary to consider it in order to a just determination of this cause, if it contained matters similar to the petition of his brother George P. Tracey, as I presume it did, though it is not copied in this record.

We express no opinion as to the true construction of the will of Edward H. Tracey except as to the construction of that claim, which made a provision for his wife, which we regard as no jointure. Some of the parties to this cause insist that he died intestate as to all his lands other than the Maud Hollow Place; others that he disposed by his will of all his lands. We express no opinion on this point, it being improper that we should do so, as the construction of the will in this respect is not involved in this cause.

Our conclusion is that there is no error prejudicial now to the appellants or appellees in the decrees of October 18, 1873, May 8, 1875, and November 17, 1876, and they should be all affirmed; that the decree of October 20, 1873, is erroneous and should be reversed, and that the decree of May 30, 1877, is erroneous in the parts, which we have indicated, and is not erroneous in the other parts of it and should accordingly be reversed in these erroneous parts and affirmed as to the correct portion of it; and that the appellants should recover of the appellees, Wm. H. Shumate and Rufus A. Shumate, their costs in this court expended; and this cause should be remanded to the the circuit court of Mercer county for the

sole purpose of proceeding in it further to the extent only of enforcing the provisions of the decree of May 30, 1877, as amended and corrected in this opinion and by the decree of this Court.

The Other Judges Concurred.

Affirmed in Part. Reversed in Part. Cause Remanded.