# WHEELING.

## McCoy *v.* McCoy *et al.*

Submitted June 7, 1887.—Decided June 25, 1887.

(*Woods, J., absent.)

1. *Res Adjudicata.*

A point once adjudicated by a court of competent jurisdiction,

*Counsel below.

however erroneous the adjudication, may be relied on as an estoppel in any subsequent collateral suit in the same or any other court at law or in equity, when either party or his privies allege anything inconsistent with it, and that too, whether the subsequent suit is upon the same or a different cause of action; nor is it necessary that precisely the same parties should have been plaintiffs or defendants in the former suit, provided that the same subject-matter in controversy between two or more of the parties to the two suits respectively has been in a former suit directly in issue and decided. The conclusiveness of the judgment or decree extends beyond, what may appear on its face, to every allegation, which has been made on the one side and denied on the other and was in issue and determined in the course of proceedings. If it appears by the record, that the point in controversy was necessarily decided in the first suit, whether upon the law on demurrer or upon the facts in issue, it can not be again considered in any subsequent suit between any of the parties or their privies. But the law of *res adjudicata* is subject to this qualification—No party can be estopped by any judgment or decree, if the record of the first suit shows, that he had no opportunity to be heard in opposition to such judgment or decree.

2. Injunction—Delay—Laches.

If an injunction be obtained to stay proceedings on a judgment or decree, and the plaintiff neglects for an unreasonable length of time to summon other defendants or to have an order of publication or to amend his bill, when he knows, there are other necessary defendants in the cause, or otherwise unnecessarily fails to expedite the suit, the court will on motion of the defendant, even before the answer is filed, dissolve the injunction because of such unreasonable delay caused by the plaintiff's negligence in preparing his case. But if the defendant, whose judgment is enjoined, acquiesce in it for years by making no motion to dissolve such injunction, if he then move to dissolve it, even after the filing of his answer years after the filing of the bill, the court because of his long delay ought to refuse to dissolve the injunction on his motion but ought to continue it till the hearing, unless the evidence to sustain the dissolution is such, as to satisfy the court, that the case can not be changed by any proof which the plaintiff can produce, such, for instance, as a judgment or decree estopping the plaintiff from proving the material allegations in his bill. But in such case the court should require the plaintiff to expedite his cause and as promptly as possible have it matured at rules and set for hearing under the penalty in case of failure of a dissolution of his injunction on motion, before the cause is ready for hearing, because of such unreasonable delay.

Statement of the case by GREEN, JUDGE :

On September 6, 1873, Benjamin McCoy filed his bill in the Circuit Court of Barbour county against Addison McCoy and ———— McCoy, children and heirs of Lucinda Rexroade, and also against Addison McCoy as administrator of said Lucinda Rexroade. The bill alleges, that at the April term, 1872, Addison McCoy, as administrator of Lucinda Rexroade, recovered against Benjamin McCoy the sum of $1,302.90 with interest from April 11, 1872, until paid, and $11.37 costs; and a copy of the judgment is filed as an exhibit. On this judgment a writ of *fieri facias* issued and was filed as an exhibit with the bill. It was levied on seven mules, two horses and sixty two head of cattle on August 2, 1873, and so returned, and it was also returned by the sheriff, that on July 8, 1873, he received from Benjamin McCoy on this execution $256.50, of which he applied $12.82½ to the payment of the sheriff's commission and the residue, $243.67½, he applied as directed by the plaintiff in writing specifying rather indefinitely the mode of said application. A *venditioni exponas* then issued requiring the sheriff to sell said property; and on this writ there was a memorandum made by the clerk, that it was subject to a credit of $243.67½ as of July 8th, 1873. This *venditioni exponas* is also filed with the bill as an exhibit. The bill states, that this judgment was recovered on two obligations executed by Benjamin McCoy to Lucinda Rexroade on June 8, 1867, one for $400.00 payable December 1, 1867, and the other for $890.00 payable June 1, 1868; and these bonds were given in pursuance of the terms of a contract under seal made by Lucinda Rexroade in her lifetime on June 8, 1867, whereby she sold to Benjamin McCoy all her right, title and interest in and to the real and personal estate of Gen'l William McCoy, of Pendleton county, West Virginia, which interest she thereby covenanted was at least one tenth of the whole of his estate, and which she bound herself to convey to Benjamin McCoy, by deed with covenants of general warranty on the 1st of December, 1867; and he agreed to pay her therefor $1,500.00, of which he paid her $210.00 in cash and gave his aforesaid bonds for the residue. It was however expressly stipulated in this contract, that neither of said

bonds, was to be *paid to her* or to *bear interest*, until the deed conveying the said one tenth interest in Gen'l William McCoy's estate was made. A copy of this agreement was made an exhibit with the bill but was never filed.

The bill further states, that Lucinda Rexroade died without making this deed leaving two sons, one of whom lived in Indiana and the other, Addison McCoy, in West Virginia; that Addison McCoy qualified as administrator of his mother, Lucinda Rexroade; that on the 10th day of February, 1872, Addison McCoy and wife executed to the plaintiff a deed, which recited the contract under seal of Lucinda Rexroade and Benjamin McCoy, dated July 8, 1867, setting it out as above stated, and also set out the fact, that Lucinda Rexroade had died leaving Addison McCoy, her only child and sole heir, and that to carry out this contract of his mother, the said Addison and his wife did grant to Benjamin McCoy with general warranty the aforesaid interest in the estate of the said Gen'l William McCoy, consisting of at least one undivided tenth part of his estate real and personal including their interest in the estate real and personal of the father of the said William McCoy. A copy of this deed is filed with the bill as an exhibit. The bill further states, that, shortly after said deed was made, the plaintiff first heard, that Addison McCoy, the grantor therein, had a brother living in Indiana, who was a joint heir with him of the estate of Lucinda Rexroade, and that therefore the said deed conveyed only one half of said Lucinda Rexroade's interest in said Gen'l William McCoy's estate; that therefore under the agreement of June 8, 1867, the plaintiff was not bound to pay either of the bonds of that date, which he gave her; that the judgment aforesaid was based on these bonds; that, until he shall receive a deed with general warranty, which shall convey to him one tenth part of said William McCoy's estate, he can not be required to pay these obligations or the judgment based on them; that, if such deed should now or hereafter be given to him, neither these bonds amounting to $1,290.00 nor the judgment based on them can bear any interest, and he asks the abatement of the entire interest included in this judgment.

The bill further states, that the interest of Lucinda Rex-

roade in the estate of the said Gen'l William McCoy, which she sold to the plaintiff as one tenth, was really not more than one fiftieth thereof; so that the $210.00, which the plaintiff paid to her in cash, more than paid her for her interest in said estate; that the said Gen'l William McCoy died in 1835, leaving a will, which though not filed with the bill is filed with an answer to the bill; that after giving specific legacies amounting to $3,300.00 and the goods in a certain store to Wm. McCoy, who had married a daughter, then deceased, of the testator and had by her a son William McCoy the third. He gave to his only descendant, his grandson, William McCoy the third, all the remainder of his property real and personal; that the will then provides:—"But in case William McCoy 3rd should die without lawful issue, then in that case all my property is to be sold at public sale, and the proceeds thereof shall be divided among my brothers and sisters then living and the heirs of those who are dead, as the law of Virginia directs, said estate to be managed by my executor William McCoy for William McCoy 3rd, until he is twenty one years of age;" that William McCoy 3rd died unmarried on November 24th, 1861; that Gen'l William McCoy had ten brothers and sisters; that one of the sisters was Sarah McCoy, whose only child and sole heir was the said Lucinda Rexroade, who by reason of said heirship claimed one tenth of his estate; that Joseph McCoy, the father of the plaintiff, died after the testator, who was his brother, and left nine children; that William McCoy 3rd died on November 24th, 1861, all of the brothers and sisters of Gen'l William McCoy being then dead, and their children, the nephews and neices of the said Gen'l McCoy, were his nearest of kin, and others, who claimed to be grandchildren of the said deceased brothers and sisters; that Gen'l McCoy's executor, his nephew William McCoy, in 1867 filed his bill in the Circuit Court of Pendleton county against all the persons claiming to be entitled under the will under the facts above stated to portions of Gen'l McCoy's estate; that a dispute arose on the question, whether after the death of William McCoy 3rd the estate was to be distributed after dividing it into ten equal parts *per stirpes*, or whether it was to be distributed *per capita* or in what manner, that *if*

the distribution was to be made *per stirpes*, Lucinda Rexroade on the death of William McCoy 3rd was entitled to one tenth of all the estate. But if the distribution should be made *per capita* among the nephews and neices of Gen'l McCoy living at the time of the death of William McCoy 3rd and the children of those who are dead, these descendants taking the part of their ancestor, her share of the estate would be less than one twentieth.

This cause was decided in the court below; but an appeal was taken, which was, when this bill was filed, pending in this Court. The bill states, that a printed copy of the record would be filed with the bill; but this was not done. The prayer of the bill is as follows:—" To the end, that justice may be done, your orator prays, that said Addison McCoy and —— McCoy, as the children and heirs of Lucinda Rexroade, and said Addison McCoy, as her administrator, may be made defendants to this bill and be compelled to answer the same upon oath; the premises being considered, he prays, that the said Addison McCoy and —— McCoy may be compelled to specifically execute the said contract of Lucinda Rexroade by conveying to your orator all of her said interest in said estate, whatever it may in fact be, according to her said contract of the 8th of June, 1867, and that in case her interest be less than one tenth of the whole of said estate, that for any such loss he be allowed a proportionable abatement out of the principal of the said obligation of $400.00 and $890.00, and if the amount paid be more than he ought to have paid, that the same may be refunded by said administrator out of the money so paid by him on said execution to said sheriff, and that until such conveyance of one tenth of said estate be made, your orator may be relieved from all interest accrued or accruing on said judgment, and the said Addison McCoy, administrator as aforesaid, from collecting the said interest on said judgment be forever enjoined; that until the said interest of Lucinda Rexroade be ascertained and said conveyance made, the said administrator and all other persons may be enjoined from enforcing collection of the said judgment, and if it be ascertained, that your orator is entitled to any abatement, that the same may be allowed as a credit of the prin-

cipal money included in said judgment; and that any amount overpaid by your orator may be repaid to him by said administrator, and that he may have such other, further and general relief in the premises as his case may require and to equity may appertain; may summons issue &c."

On the 1st day of September, 1873, the judge of the second circuit granted an injunction as prayed for in the plaintiff's bill upon the execution of a prescribed injunction-bond, which bond with the requisite security was given, and a summons, as prayed for, issued against Addison McCoy and —— McCoy, children and heirs at law of Lucinda Rexroade and said Addison McCoy, her administrator. On this summons the proper memorandum of the injunction awarded and in operation was endorsed by the clerk of the Circuit Court of Barbour county; and it was served on Addison McCoy on the 29th of November, 1873. At January rules, 1884, a decree *nisi* was entered against Addison McCoy; and the summons on —— McCoy not having been served, the case was continued as to him. At February rules, 1874, the bill was taken for confessed as to Addison McCoy and set for hearing against him on plaintiff's motion and was continued as to —— McCoy, on whom process had not been served. In like manner it was continued by entries on the rule-book as to —— McCoy at each rule-day for more than eleven years till and including July rules, 1885. On the 10th day of July, 1885, Addison McCoy, administrator of Lucinda Rexroade, filed a written demurrer to plaintiff's bill, in which the plaintiff joined; and said administrator moved the court to dissolve the injunction, which had been awarded.

This demurrer alleges as grounds of demurrer: "that no copy of the contract of Lucinda Rexroade is filed with the bill, although made one of its exhibits; and that by the terms of this last will of Gen'l William McCoy his whole estate was converted into personalty at the death of his grandson, William McCoy 3d; and the plaintiff's bill on its face shows, that the plaintiff held a perfect title to one tenth part of said estate, which he bought from Lucinda Rexroade." Three days thereafter on July 13, 1885, Addison McCoy

administrator as aforesaid filed his separate answer to this bill and again moved the court to dissolve the injunction. This answer denied many allegations in the bill which I have not stated because they are immaterial. The material allegations denied and facts stated in this answer are as follows :

Addison McCoy had no sister but had a brother Hezekiah McCoy, who died about 1851 leaving a son, who died without issue, when fifteen years of age, and a daughter, Sarah E., who intermarried with one William E. Jack. On October 2, 1880, William E. Jack and his wife, Sarah E. Jack, a granddaughter of Lucinda Rexroade and one of her heirs, and also Nancy Stewart, the widow of Hezekiah McCoy, executed a deed to Addison McCoy, whereby they granted with special warranty of title "all their right, title and interest in and to the estate of Lucinda Rexroade." This deed, while properly acknowledged by the parties, does not appear to have been recorded. It is claimed, that by virtue of the covenant of general warranty in the deed from Addison McCoy and wife to the plaintiff all the right, title and interest of Sarah E. Jack and Nancy Stewart (if this interest could be regarded as real estate, and it is claimed, it could not) passed to the plaintiff, and thus his title became complete. This answer further alleges, that, when William McCoy 3d died, Gen'l McCoy's brothers and sisters had all died, some of them leaving children, who were then living ; that some of these children had died leaving children ; and thus, it was claimed, as the estate was under the will to go "by the laws of Virginia" it would descend *per stirpes* and not *per capita ;* and Lucinda Rexroade got, what her mother Sarah McCoy, one of the ten brothers and sisters of Gen'l McCoy, would have gotten, that is, one tenth of the estate ; and the whole of said estate having been converted into personalty, this one tenth was conveyed by the sale and agreement of Lucinda Rexroade, dated June 8, 1867, and the execution of the subsequent deed of February 10, 1872, was wholly useless and nugatory.

He filed with his answer a copy of the record in the case of *William McCoy's executor* v. *William McCoy's devisees* referred to in the bill, to show, that its contents were misstated in the bill. From this it appears, that our Court since

the filing of the bill reversed all the decrees of the court below on September 9, 1876, for want of proper parties and remanded the cause to the Circuit Court of Pendleton to be proceeded with *de novo*, and a copy of the subsequent proceedings in the cause is also filed with the answer, from which it appears, that the Circuit Court of Pendleton rendered a final decree on October 23, 1880.

I deem it unnecessary to set forth any portion of this voluminous record except to state from it the character of the bill and the decrees rendered, after the cause was remanded, as all the decrees and proceedings were set aside and reversed without considering their merits, because process had not been served or order of publication executed against most of the defendants, so far as the record showed. The record filed showed, that the suit was brought in 1867 by William McCoy's executor to obtain a construction by the court of the will hereinbefore referred to and a determination of the relative rights and interests of all persons claiming under it; to have all the real estate of William McCoy, deceased, sold and to have certain specified acts of said executor confirmed. There were more than fifty defendants named in the bill besides many others said to be heirs of deceased parties, whose names were unknown. Among the defendants were Benjamin McCoy, the plaintiff in this cause, and Lucinda Rexroade, the defendant here. By a decree in that cause a construction was put on the will of Gen'l McCoy; but as it and all the other decrees in the cause were reversed and annulled, I do not deem it necessary to state more in reference to the cause than the action taken in it, after it was remanded to the Circuit Court of Pendleton.

On the 26th day of April, 1880, that court rendered a decree in the cause, in which it was recited, that it had been suggested to the court, that William McCoy in his own right was the owner of all the shares of all the devisees of Gen'l William McCoy except a fraction of one or two shares; and thereupon it was decreed, that the cause be referred to a commissioner to ascertain, to whom the funds in the cause belonged; the value of the interest owned by any of the defendants other than William McCoy, and to settle

the account of the receiver. Under this order the commissioner settled said account showing in the hands of said receiver $886.08. He reported, that William McCoy then owned all the estate, which descended from Gen'l McCoy except one three hundred and sixtieth part thereof owned in different amounts by nine different parties, grandnephews and grandneices of Gen'l McCoy. He estimated the interest of these parties in the estate to be worth: two of them $37.50 each and the other seven $5.37½ each. The nine persons referred to as the only persons, whose interests had not been purchased by William McCoy were all descendants of Eliza Reger, one of the daughters of Joseph McCoy, a brother of Gen'l McCoy. None of the parties to the present suit claim in this suit anything under Joseph McCoy; but in this cause the controversy is in reference to what was the interest of Lucinda Rexroade. The report shows, that the commissioner in calculating the amount coming to the nine, who had not sold their interest, regarded them as respectively entitled to the same portion of the estate, that they would have been entitled to receive, if Gen'l McCoy had died intestate leaving no descendants, but leaving nine brothers and sisters and children and grandchildren of deceased brothers and sisters. The report of said commissioner not having been excepted to was confirmed by the decree of October 23, 1880. The amount, to which each of the nine descendants of Eliza Reger was entitled under said report, was decreed to be paid to each of them; and the balance of the estate not already in his hands was decreed to be paid to him.

In the cause before us the deposition of Addison McCoy only was taken. It was taken on the 2d of July, 1885, eleven days before his answer was filed. The facts set forth in his answer, as above stated, were deposed to by him with some very important exceptions. First, he does not prove distinctly, that none of Gen'l McCoy's brothers and sisters were living, when William McCoy 3d died, which was, he thinks, in 1862 or 1863. He simply deposes, that none of them were then living, that *he knew of*. This is not at all inconsistent with the fact, that some of them might have then been alive, as several of them had gone long before to

the West.   Second, he deposes, that when William McCoy 3d died, there were living a number of the children of the brothers and sisters of Gen'l McCoy, but he does not know how many.   He says, he knows, that at that time some of the children of Gen. McCoy's brothers and sisters were dead, but he does not know, whether those, who died, or any of them left children.   So that the important statement in his answer—"that the testator's heirs at law, when his estate passed to them, were not of the same degree of relationship to him but of different degrees, some being nephews, nieces, and some being children of such nephews and nieces," though not contradicted by his deposition, is not sustained. Accordingly when Addison McCoy swore to his answer, he swore only that "he believed the facts and allegations in his answer to be true,"—not that they were true.

On the 6th day of October, 1885, the following decree was entered by the Circuit Court of Harrison county :

This cause came on this day to be heard upon the bill, process duly executed on the defendant, Addison McCoy, administrator of Lucinda Rexroade, deceased, proceedings at rules regularly taken and matured, upon the demurrer of said administrator heretofore entered, joinder therein, upon the separate answer of said administrator heretofore filed, general replication thereto, upon former orders and decrees made herein, upon the exhibits named in the pleadings and evidence, upon the deposition of Addison McCoy heretofore filed, upon the motion of said administrator to dissolve the injunction heretofore awarded in this cause, and upon the argument of counsel.   Upon consideration whereof, it is adjudged, ordered and decreed that said demurrer be overruled and that the injunction heretofore awarded the plaintiff enjoining and restraining the said administrator from collecting a judgment rendered by the Circuit Court of Barbour county at its April term, 1872, in his favor against the plaintiff for the sum of $1,302.90, with interest thereon from the 11th day of April, 1872, and $11.37 costs, be and the same is wholly dissolved, and the court now ascertaining that the amount of the debt, interest and costs due on said judgment on the 1st day of September, 1873, when said injunction took effect, was the sum of fourteen hundred and forty nine dol-

lars and twelve cents ($1,449.12), and that the damages accrued on said amount at the rate of ten *per cent. per annum* from the 1st day of September, 1873, to this day, amount to the further sum of seventeen hundred and fifty dollars and ninety cents ($1,750.90), making in the aggregate the sum of $3,200.02, it is adjudged, ordered and decreed that the plaintiff, Benjamin McCoy, do pay to the defendant, Addison McCoy, administrator of Lucinda Rexroade, deceased, the said aggregate sum of thirty two hundred dollars and two cents (3,200.02), with interest thereon from this day, and the costs by him incurred in defending this suit. It is further adjudged, ordered and decreed that the execution may issue for the said last named sum, interest and cost against said Benjamin McCoy.

From this decree Benjamin McCoy has obtained an appeal and *supersedeas.*

*John Brannon* for appellant.

*Martin & Woods* for appellees.

Green, Judge :

It will be seen from the statement above, that the propriety of the decree of October 6, 1885, depended principally upon what was the real interest of Lucinda Rexroade in the residuary estate of Gen'l McCoy. Her interest had been sold, the bill alleges, to the plaintiff with a guarantee by her, that said interest was not less than one tenth of the estate ; and the judgment enjoined was obtained by her on Benjamin McCoy's bonds, given for part consideration for such interest. The injunction was granted, principally on the ground that it had not been ascertained, what her interest was, whether one tenth, one twentieth or one fiftieth, as it depended largely on the construction of Gen'l McCoy's will and upon the number of his kin living at the time of his death and at the time of the death of William McCoy 3rd, and their relationship to said Gen'l McCoy. The first inquiry then will be, whether Benjamin McCoy is not by the decree of October 23, 1880, in *McCoy's Ex'r* v. *McCoy's Devisees*, estopped from alleging or proving, if he could, that the said interest was less than the one tenth, which Lucinda Rexroade guaranteed it to be. One of the principal objects of

that suit was to ascertain the interest of each of the devisees under a true construction of the will. After the cause had been pending for years and been carried to the Court of Appeals, all the decrees in it were reversed, simply because many proper and necessary parties had not been brought before the court. Everything that had been done in the case up to that time, was set aside and annulled because of this defect in the proceedings, (9 W. Va. 443) and the cause was remanded to the Circuit Court of Pendleton county. In the meantime one of the devisees had purchased all the interest of all the devisees except a few, who under one construction of the will, were supposed to own one three hundred and sixtieth part of the estate to be distributed among the residuary devisees. This matter was referred to a commissioner, who so reported and ascertained the amount of the interest of each of the devisees, when William McCoy made these purchases; and on the facts before him, not reported to the court, his conclusion was, that the said William McCoy owned all the interest of all the devisees except nine, named by him, whose aggregate interest was found by him to be only one three hundred and sixtieth part of the residuary estate. The value in money of each of these interests was reported; and the report shows the principle, which he adopted in his calculations. If this principle had been applied in calculating Lucinda Rexroade's interest (though it was not, as her interest was one of those owned by William McCoy) it would have shown that interest to be just one tenth, as the bill alleges, she guaranteed it to be, when she sold it to Benjamin McCoy.

If this was a conclusive judgment determining as between her representatives and Benjamin McCoy, a party to said first cause, that Lucinda Rexroade's interest was one tenth, it would tend to show the justice and propriety of the decree appealed from. I have therefore examined this point, though it was not relied on by the defendants below nor apparently by their counsel here. I have concluded, that this decree did not operate as an estoppel to the parties to this cause; and I will now give the reasons which have led me to this conclusion.

I regard it as settled by our decisions, that a point once

adjudicated by a court of competent jurisdiction, however erroneous that adjudication, may be relied upon as an estoppel in any subsequent collateral suit in the same or any other court in law or in chancery, when either party or his privies allege anything inconsistent therewith, and this too, when the subsequent suit is upon the same or different cause of action ; nor is it necessary, that precisely the same parties were plaintiffs or defendants in the suit; provided the same subject-matter in controversy between two or more of the parties to the two suits respectively has been in the former suit directly in issue and decided. The conclusiveness of the judgment or decree extends beyond what may appear on its face to every allegation, which has been made on one side and denied on the other and was in issue and determined in the course of the proceedings. If it appear by the record, that the point in controversy was necessarily decided in the first suit, whether upon demurrer or the facts in issue, it can not be again considered in any subsequent suit between any of the parties or their privies. But this law of *res adjudicata*, is subject to the following qualification : No party can ever be estopped or in any way prejudiced by any judgment or decree, if the record in the first suit on its face shows, that he had no opportunity to be heard in opposition to the entry of such judgment or decree. (*Pool* v. *Dilworth*, 26 W. Va. 583 ; *Corruthers* v. *Sargent*, 20 W. Va. 356 ; *Beckwith* v. *Thompson*, 18 W. Va. 103 ; *Coville* v. *Gileman*, 13 W. Va. 327 ; *W. M. & M. Co.* v. *Va. C. C. Co.*, 10 W. Va. 250 ; *Tracy* v. *Shumate*, 22 W. Va. 509 ; *Renick* v. *Ludington*, 20 W. Va. 511 ; S. C. 16 W. Va. 379 ; *Haymond* v. *Camden*, 22 W. Va. 192, 199 ; *Stevens* v. *Brown*, 24 W. Va. 234 ; *Underwood* v. *McVeigh*, 23 Gratt. 409.)

The first of the above cases establish the general principles of the law as to *res adjudicata* as above stated ; and the last five establish the qualification given above. *Haymond* v. *Camden*, 22 W. Va. 182, pt. 9 of Syll., and *Stevens* v. *Brown*, 24 W. Va. 236, decide expressly, that a sentence of a court pronounced against a party, when the court did not hear him or give him an opportunity to be heard, is not a judicial determination of his rights and is not entitled to re-

spect in any other tribunal. It must follow as a matter of course, that such party can not be estopped by such a decision as *res judicata* in any other suit between the same parties involving the question at issue and so decided in the first suit. In each of these cases the party, against whom the decision was rendered, was, when it was rendered, resident in a country at war with the country, in which such decision was rendered, and thus could have no opportunity to be heard on the questions decided. Such decision was not binding on him as *res adjudicata.* In *Renick* v. *Ludington*, 20 W. V. 511, it was decided, that the law of *res adjudicata* can not be permitted to overthrow or destroy another fundamental principal, that every person, who is to be affected by an adjudication, should have an oportunity to be heard in his defence both in repelling matters of fact and upon matters of law. In that case the decree, which was relied upon as *res adjudicata*, had been pronounced, before the party, who resisted it, had been made a party to the suit, and so before he had an opportunity to be heard in his defence. It is the *status* of the cause, when the decree relied upon as *res adjudicata* was entered, which must be looked to in determining, whether it can be so regarded. It can not be so regarded, if the party, against whom it is relied upon as *res adjudicata*, had not an opportunity to dispute before the court the points of law or of fact, the decision of which affects his interest in some subsequent suit. This I impliedly recognized as law in the opinion in *Tracy* v. *Shumate*, 22 W. Va. 510:—" It is sufficient to make a decree an estoppel as *res adjudicata*, if the *status* of the suit was such, that the parties might have had their suit disposed of on its merits, if they had presented all their evidence, and the court had properly understood the facts and correctly applied the law to the facts." For of course from this it would follow. that, if the *status* of the suit, when a decree was rendered, was such, that any of the parties to it had not then or prior thereto the opportunity to present any proof as to the facts bearing on the points to be decided, and had no oportunity to be heard on the law involved in the decision, when it was rendered, he could not be bound by such evidence as *res adjudicata* in another subsequent

suit, in which the point so decided would be prejudicial to him.

It matters not, that, when such decree was rendered, such person was a party to the suit, if for any reason he had no opportunity to be heard. This is illustrated by *Haymond* v. *Camden* and *Stephens* v. *Brown* above cited and still better by *Underwood* v. *McVeigh*, 23 Gratt. 409. In that case Underwood was a party to the suit at the time, when the decree relied upon in a subsequent suit as an estoppel was pronounced; but the court had in the first suit improperly stricken out his answer and refused to let him defend the suit, because he was a rebel; and for that reason he did not have an opportunity, when the decree was entered, to be heard. The court held in another subsequent suit, that he could not be estopped by the decree as *res adjudicata.*

Enough has been said to show, that however firmly the principles of *res adjudicata* as stated above are incorporated in our jurisprudence, and however pertinaciously they may have been upheld in spite of the wrong occasionally inflicted on individuals, they must yield to the still more fundamental principle, that no one can be bound by any judgment or decree, if the record shows, that, when it was rendered, he had had no opportunity to be heard on the questions of law and facts involved, whether the decision was prejudicial to his rights in the cause, in which it was rendered or be prejudicial to his rights only in a subsequent suit arising from another cause of action with other parties to the suit or their privies. When these principles are applied to the case before us, it is obvious, that the decree in *McCoy's executor* v. *McCoy's devisees* rendered by the Circuit Court of Pendleton on the 23d of October, 1880, can not estop Benjamin McCoy in the cause before us from alleging, that the interest of Lucinda Rexroade in the estate of Gen'l McCoy was less than one tenth thereof, because the record in the case shows, that neither Benjamin McCoy nor Lucinda Rexroade had, when the final decision was entered any opportunity to be heard. If either of them had regarded the report of the commissioner as to what portion of Gen'l McCoy's estate should be given to each of the residuary legatees, as erroneous, neither of them could have excepted to

it for such error; for, if it was an error, it could not have affected either of them injuriously. William McCoy and any of the defendants, who by the commissioner's report appeared still to have an interest in the question, and in whose favor the court in this final decree ordered money to be paid as decided in the report, could have excepted to it and could have been heard by the court, and having this opportunity to be heard they are bound by this decree as *res adjudicata;* but none of the other parties to this suit are so bound. The plaintiff in the cause before us and Lucinda Rexroade, the ancestress of the defendants, could have excepted before the commissioner to that part of his report in which he states that William McCoy then owned all their interest in the estate, and they are therefore bound by this final decree, which confirmed the report in this particular, and are estopped from asserting in a subsequent suit, that William McCoy did not then own their interest. But this question is not involved in the cause before us. They did not in that case take that course, doubtless because they knew, that in that respect the commissioner's report was correct. Benjamin McCoy's deed to William McCoy, filed with the answer in this cause, shows, that they had transferred all their interest as devisees to William McCoy; and there was no stipulation in the transfer, whereby they or either of them could be held responsible, however small said interest might prove to be. So that the only effect of sending the deed to the court with the report of the commissioner, if they had chosen to do so, would have been to show even more clearly than the report shows, that they could not be heard on the final decree entered in the cause, because they had no interest in it; and they would have had no right to complain, if they had been dismissed from the cause by the order of the court.

This decree therefore can neither estop any of the parties to the cause now before us nor be used as evidence for or against any of them.

As it was not shown in this cause, that any of the witnesses in *McCoy's executor* v. *McCoy's devisees* was dead or for any other reason was incapable of giving testimony without extraordinary trouble, it is questionable whether

on the trial of the cause any of their depositions could be read. It is the practice in England never to allow depositions in any other cause between the same parties to be read, unless the court has entered an order permitting them to be read (2 Dan. Ch'y Prac., 3d Am. fre 3d Eng. Ed. 865-867); but I am not prepared to say, that this practice has been or should be followed in this State. When depositions in one chancery cause have been read in another, so far as I have observed, no formal order of the court permitting it seems to have been made. (*Payne* v. *Coles*, 1 Munf. 373; *Chapman* v. *Chapman*, Id. 398). Whether any of the depositions in *McCoy's executor* v. *McCoy's devisees* can be read on the hearing of this cause, and what course, if any particular course, should be pursued, in order that any of them may be so read, I deem it unnecessary to consider or to express any opinion in the cause as now presented to us. It is only necessary or proper now to decide, whether on a motion to dissolve the injunction the court below or this Court should read any of these depositions. It seems to me, that neither court should read them; and I presume, they were not read by the court below. I base my opinion on the peculiar manner, in which, and the time, at which the record and depositions were filed in this cause. They were filed more than thirteen years after the filing of the bill as an exhibit with the only answer and are not brought in as evidence in the cause, and nothing is said about the depositions. The entire record in *McCoy's executor* v. *McCoy's devisees* is filed as an exhibit simply to show, that the pretensions of the parties to that cause as shown in the bill were not correctly stated, and because, though this record had been referred as an exhibit in the bill, it had not been filed with the bill. The notice to dissolve the injunction, which had been granted more than thirteen years before, was given twelve days after the record and depositions were thus filed; and on this motion the decree appealed from dissolving the injunction was rendered. This notice to dissolve was given only ten days after the taking of the only deposition, which was ever taken in this cause. I presume, that the bill and answer and this deposition and perhaps the final decree in *McCoy's executor* v. *McCoy's devisees* was all that

the court considered before dissolving the injunction. It is very questionable, whether the court ever considered said final decree, as it was not referred to or relied upon as an estoppel in the answer; and we have seen, the court should not have considered it, because it could not be evidence either for or against any of the parties to this cause. If the court on the motion to dissolve had read the numerous depositions introduced into this cause in the manner, we have stated, it would have operated a surprise on the plaintiff, who had no reason to suppose, that they would be relied upon, and, even if he had guessed they would, had no opportunity to take any depositions to disprove them.

While I do not at present think, it would have been necessary, as is the practice in England, to obtain an order of the court, that these depositions, if competent testimony, might be read, still it was necessary, before the court should read them on the motion to dissolve, that the defendant, if he relied upon them as evidence, should have intimated at least, that he did so, in his answer filed only a few days, before he gave notice of his motion to dissolve, and with which he filed the record containing these depositions. For this reason alone (even if they were competent evidence, on which I express no opinion) they should not have been and, I presume, were not read on the motion to dissolve; and in reviewing the decree dissolving the injunction we will not consider any of these depositions.

On the hearing of a motion to dissolve an injunction the defendant making the motion must be considered as the actor, and on him rests the burden of disproving the allegations in the bill, which have been sworn to by the plaintiff, and which show, that he is entitled to the injunction which he has obtained. If the allegations of the bill, when taken as true, do not show, that the plaintiff is entitled to the injunction granted, it will be dissolved on motion even before answer filed. (*Ludington* v. *Tiffany*, 6 W. Va. 11.) But if the allegations are sufficient to entitle the plaintiff to the injunction, they must be proven to be untrue by the defendant on his motion to dissolve after answer filed. The answer itself, if sworn to, though not evidence in this State on a final hearing of a chancery cause, is evidence on a mo-

tion to dissolve an injunction carrying with it the weight of an affidavit. In this case the affidavit made to the answer is merely that "the defendant believes, that the facts and allegations contained in his answer are true." Such an affidavit can have no weight on a motion to dissolve an injunction; for it may well consist with the fact, that the affiant has no knowledge with reference to the essential facts, on which the injunction was granted. He may well believe from idle reports or hearsay, that the statement of facts, on which the injunction was granted, was false, and he may properly on such reports declare in his answer the statement to be false, if he swear to his answer, as this answer was sworn to.

The only evidence before the court on the motion to dissolve was the exhibits filed with the bill and the deposition of the defendant. Was that sufficient evidence to justify the court in dissolving the injunction, which was awarded more than thirteen years before? The judgment enjoined was for the consideration to be paid by Benjamin McCoy to Lucinda Rexroade for all her right, title and interest in and to the real and personal estate of Gen'l McCoy, deceased, under his will, whereby he gave all the remainder of his estate after paying certain bequests and devises to his grandson, William McCoy 3rd, with the following qualification: "But in case William McCoy 3rd should die without lawful issue, then and in that case all the testator's estate, real and personal, shall be sold at personal sale, and the proceeds thereof shall be divided among my brothers and sisters then living and the heirs of those who are dead, as the law of Virginia directs." The testator, a resident of Virginia, where all his property was situated, died in 1835 and William McCoy 3rd in 1861 or 1862 after attaining his majority unmarried and without issue. The testator had ten brothers and sisters. The record now presented to this Court, though it may hereafter be changed, shows, that, when the plaintiff purchased all the interest of Lucinda Rexroade in Gen'l McCoy's estate, she guaranteed said interest to be at least one tenth of the remainder of the estate after the payment of the special legacies and devises. And by a sealed instrument she bound herself to convey it to

him by deed with covenants of general warranty on December 1, 1867. This agreement further stipulated, that the unpaid consideration for said purchase was neither to be paid nor to bear interest, until the deed was made.

The injunction to the judgment of the administrator of Lucinda Rexroade, based on the unpaid consideration for said purchase, was founded on two allegations in the bill, one, that Lucinda Rexroade did not in her lifetime make the conveyance to the plaintiff, and that since her death only one of her two heirs had made such conveyance, and that. the plaintiff should not be required to pay the balance of the purchase-money, till such conveyance should be made, and that then he should not be required to pay any interest;— the other, that it had not been ascertained, though a suit had been brought for that purpose, what was the interest of Lucinda Rexroade in said estate; that therefore the plaintiff should not be required to pay the judgment till this was ascertained.

The position taken in the answer of Lucinda Rexroade's administrator and in his demurrer to the bill and in the argument of his counsel in this Court is, that by the clause in the will above quoted on the death of William McCoy 3d all the real estate of Gen'l McCoy was ordered to be sold, and so his whole estate was converted into personalty when said William McCoy 3d died in 1861 or 1862, and therefore the agreement under seal made by Lucinda Rexroade on June 8, 1867, necessarily operated as a legal construction to convey all her said interest without any formal deed; and therefore the stipulation, that she would make a deed was idle and inoperative, and her failure to make such deed would not relieve the plaintiff from the payment of interest on the unpaid purchase-money or on the judgment representing it.

I do not deem it necessary or proper to decide the legal question involved in this position, as the decision, whatever it might be, could have no effect on the conclusion, which I reach in the cause before us. To show this I will assume, that the last reason for awarding this injection was on the face of the bill groundless. The other reason for the injunction, that Lucinda Rexroade did not own one undivided tenth

of Gen'l McCoy's estate under his will, is claimed to be equally groundless. The answer of Lucinda Rexroade's administrator on this point is as follows : " That the heirs at law of said Gen'l William McCoy were all nephews and neices of said testator, Gen'l William McCoy, when said William McCoy 3d died; and said estate by virtue of said limitation over in said will passed to said heirs is not true. On the contrary said testator's heirs at law, when the estate passed to them, were not of the same degree, some being nephews and neices, and some being children of such nephews and neices. So that said estate, by the law of Virginia, descended *per stirpes* and not *per capita*, as the plaintiff pretends, some persons (not however including himself ) claim ; and Lucinda Rexroad did inherit the share of her mother, Sarah McCoy, in said estate, which was one tenth."

I deem it unnecessary in this cause, as now presented to us, to decide the legal question thus raised by the defendant ; for whatever that decision might be, my conclusion would be the same. I will therefore for the sake of argument assume that defendant's position stated above is correct. But as the defendant did not in the affidavit to his answer swear to the truth of the statement on which he based his legal conclusion, but only swore, that he believed them to be true, the answer and affidavit on a motion to dissolve an injunction can not, as I have shown, be regarded as evidence. The deposition of the defendant, I will now show, did not prove the statements in his answer ; and on the motion to dissolve, the burden of proof rests on him. Did he in his deposition prove, as he alleged in his answer, that the testator's heirs at law, when his estate passed to them, were of different degrees of relationship to him, some being nephews and neices and some being children of such nephews and neices ? In his deposition he says :—"When William McCoy 3d died, none of Gen'l William McCoy's brothers and sisters were living, *that he knew of.*" But as many of them had gone to the West, and he did not profess to know much, if anything, about them, his deposition certainly does not prove, that they were all dead, when William McCoy 3d died, but only, that he believed them to be dead and knew nothing to the contrary. If we assume, that he

was right in this supposition, the allegation in his bill is true, that at the death of William McCoy 3d his heirs at law instead of being of different degrees of relationship to Gen'l McCoy were all of the same degree, nephews and nieces, and under the "law of Virginia" the descent would be *per capita* instead of *per stirpes*, as claimed in the answer, unless as in effect is stated in the answer, some of these nephews and nieces were dead, when William McCoy 3d died, and had left children or descendants living, which the defendant in his deposition fails to prove, swearing on the contrary, that he does not know whether it is true or not, and answering when asked, whether any of these nephews and nieces left children:—"there was only one of them in Pendleton county, Virginia, that I knew of. Some of them have moved West, and I am not acquainted with their descendants." This is all the proof on this subject in the deposition. It certainly fails to prove the allegations of the answer, showing on the contrary, that he did not know, whether they were true or not.

If therefore the law be correctly stated in his answer, it may still be true, that the only heirs at law of Gen'l William McCoy at the death of William McCoy 3d were his nephews and neices, who all stood in the same relation to him, and the distribution according to the law of Virginia would be *per capita* not *per stirpes*, and the interest of Lucinda Rexroade was not the share of her mother, Sarah McCoy, one of the brothers and sisters of Gen'l McCoy. The defendants have also failed to show, that the share of Lucinda Rexroade in the estate of Gen'l McCoy was one tenth, as she guaranteed it was, when she sold her interest to the plaintiff. If it was less that one tenth the injunction should not have been totally dissolved. But there is a still stronger reason, why the court on this motion ought not to have dissolved this injunction either in whole or in part but should have denied the motion and waited till the case was ready for hearing before either dissolving or perpetuating this injunction in whole or in part, requiring the plaintiff under penalty of dismissing his bill to put the cause in a condition, in which it could be made ready for hearing in a reasonable time.

I prefer to base this opinion and the decree, which we enter, on this ground solely, as I regard it to be one, which is applicable to every motion to dissolve an injunction, when such motion is made years after the injunction was awarded. If I understand the law in such a case, it is this:—When an injunction is awarded, the defendant may at once give the plaintiff notice, that he will move to dissolve such injunction ; and upon reasonable notice in writing of the time, when, and the place, where such motion will be made, it may be acted upon by the judge in vacation. (Warth Am. Code, ch. 133, § 12, p. 739). The reason of this is obvious. The defendant may be greatly prejudiced by such injunction ; and justice to him may require prompt action on a motion to dissolve. If the motion is made, before the defendant has filed an answer, when the allegations of the bill have been verified by affidavit, as they must be, they must be taken to be true. (*Ludington* v. *Tiffany,* 6 W. Va. 11; *Peatross* v. *McLaughlin,* 6 Gratt. 64). If the grounds for asking an injunction as stated in the bill are not sufficient to justify the awarding of an injunction, the defendant before moving to dissolve it should file his answer, which should be sworn to. If the answer fully and fairly meets all the material allegations in the bill without evasion, it must be taken as true, so far as it is so responsive to the bill ; and, if when so regarded as true, it leaves no reasonable doubt on the mind of the court as to the impropriety of continuing the injunction, it should at once be dissolved, otherwise, it should be continued to the hearing. Of course the statements made in the answer and regarded as true by the court must be supported by affidavit; and if the affidavit, as in the case before us, does not verify the statements in the answer but simply states, that the respondent believes them to be true, they will not be regarded as true. (*Miller* v. *Washburn,* 3 Ired. Eq. 161; *Brewer* v. *Day,* 8 C. E. Green 418; *North* v. *Person,* 4 Rand. 1; *Brown* v. *Stewart,* 1 Md. Chy. 87).

If the answer does not on these principles justify a dissolution of the injunction, the motion to dissolve may be supported by affidavits or depositions. If on so dissolving the injunction promptly the plaintiff is injured, by introducing

further evidence he may have it re-instated on his motion. (*Toll Bridge* v. *Free Bridge*, 1 Rand. 206.) If no motion is made by the defendant for years to dissolve an injunction, the inference is, that he is not seriously damaged by it, and that he regards the bond given by the plaintiff as sufficient protection till the hearing of the cause, when the injunction will be dissolved, if its continuance is improper. Hence delay on the part of the defendant to make a motion to dissolve does not alone constitute a sufficient ground for refusing the motion; but it will cause a court to hesitate to grant the motion, unless the defendant makes a very strong case. (*Hichford* v. *Shews*, 4 Myl. and Cr. 500; *Feisted* v. *Kings College*, 10 Beav. 491; *Bell* v. *Railway Co.*, 1 Eng. R'y Cas. 616.)

These principles seem to me to be especially applicable to a motion to dissolve an injunction to stay proceedings in this State on a judgment for money; for our statute provides, that, when such injunction is dissolved, there shall be paid to the party holding the judgment or decree as damages interest at the rate of ten *per cent. per annum* on so much of said judgment, as may be due, from the date thereof with costs. (Warth Am. Code, chap. 133, § 12.) If the defendant has for years acquiesced in said injunction, he can hardly be regarded as injured by the fact, that the court refused to dissolve the injunction on his motion and required him to wait till the final hearing of the cause, thus affording to both parties the fullest opportunity to have the question decided on its merits. I think therefore, I am fully justified in saying, that such an injunction should not be dissolved on motion but should be continued to the hearing of the cause, unless on the motion the evidence of the defendant is such, that the court sees clearly, that no evidence, which the plaintiff can produce, can alter the case materially. As for instance when the defendant shows, that the plaintiff is estopped by the judgment or decree of a court from further alleging the existence of facts or of law, which form the basis of the injunction. In such cases only should a court under such circumstances sustain a motion to dissolve such an injunction but should continue the injunction in force till the cause can be regularly heard on its merits. In no other case

can the court sustain such a motion under such circumstances without the danger of doing injustice to the plaintiff, while no real injustice will be done to the defendant by continuing the injunction till the hearing.

In this cause no motion was made to dissolve the injunction for thirteen years, after it was granted. The defendant acquiesced all this time and on his motion to dissolve offered no evidence, that the plaintiff was estopped from proving the material allegations in the bill, on which the injunction was properly awarded. The Circuit Court therefore erred in the decree appealed from dissolving the injunction on the defendant's motion. It should have continued the injunction in force till the hearing of the cause.

But the plaintiff in this cause has been grossly negligent. Having obtained his injunction upon an *ex parte* statement he has permitted the cause to be continued at rules for more than thirteen years as to one of the defendants, neither having process served nor order of publication taken against him; and, though for years he has known, that one of the defendants in his bill was dead, when the suit was instituted, and also who his representatives were, he has never amended his bill, so as to make them parties; and in addition to this he never has filed with his bill his agreement with Lucinda Rexroade, upon which he relied as the ground of his injunction, and which his bill professed to file as an exhibit. If the defendant, upon whom process was served, and whose judgment was enjoined, had not been equally negligent in not calling the attention of the court to these omissions and defaults of the plaintiff and in failing for thirteen years to make a motion to dissolve the injunction, the court ought to have dissolved the injunction on motion because of the plaintiff's delay in bringing the proper parties before the court and his delay in getting the cause ready for hearing; for a court ought on motion to dissolve an injunction, if the plaintiff is grossly negligent in advancing the cause by permitting it to continue at rules an unreasonable length of time, whenever such motion is made with reasonable promptness. But, if such motion also be unreasonably delayed by the defendant, the court ought not except under peculiar circumstances to dissolve the in-

junction on motion, even though the plaintiff has been guilty of gross negligence in failing to advance his suit. But in such case, while the court should refuse to dissolve the injunction on motion, it should require the plaintiff to prepare the case promptly for hearing by having the summons served on all the defendants or order of publication made against the absent defendants or by filing an amended bill making the requisite parties and promptly preparing it for hearing under the penalty of dissolving the injunction and dismissing the bill on motion. (*Depeyster* v. *Graves*, 2 Johns. Ch'y 146; *Gray* v. *The Duke, &c.*, 17 Ves. 231; *Corry* v. *Voorhees*, 1 Green (2 N. J. Ch'y) 5; *Beckford* v. *Shewes*, 4 Myln. & Co. (18 Eng. Ch'y) 498; *Farrow* v. *Vansittart*, 1 Eng. R'y Cas. 602; *Bell* v. *Railway Co.*, Id. 616).

In the cause before us a brother of the defendant, Addison McCoy, was made a defendant with him, but his name was unknown. The answer of Addison McCoy and his deposition show, that he had been dead for many years before the filing of the bill, but that he had representatives living, who ought to be made defendants. These representatives were Sarah E. Jack, W. E. Jack, her husband, and Nancy Stewart, her mother. The court ought to require an amended bill to be filed making these parties defendants, though their co-defendant, Addison McCoy, alleges, that they have conveyed all their interest in the estate of Lucinda Rexroade to him. But they have a right, if they think proper, to dispute this allegation and to be heard in the cause.

There is an obvious error in the decree appealed from in the ascertainment of the debt, interest and costs due on the judgment. It is ascertained by the court below to have been $3,200.02 on October 6, 1885. In so ascertaining the amount the court gave no credit on the judgment enjoined, though the sheriff's return on the execution shows, that it was entitled to a credit of $243.67½ paid upon it on July 8, 1873, by Benjamin McCoy; and the *venditioni exponas* also shows, that it was entitled to this credit; and both the execution and the *venditioni exponas* were filed with the bill as exhibits, and the credit was claimed in the bill. It is true, the answer of Lucinda Rexroade's administrator avers, that it is not true, that the plaintiff made any payment to

the sheriff on this execution, denying inferentially the sheriff's return. But the affidavit appended to this answer states only, that the respondent believes the statements made in it to be true; and in his deposition he says nothing about it. On this evidence the court should have allowed this credit. The calculation is made as prescribed by chap. 133, § 12, p. 738 of Warth's Amended Code; and without this credit it would be as follows:

| | |
|---|---:|
| Amount of judgment. | $1,302 90 |
| Interest from April 11, 1872, to September 1, 1873, when injunction took effect. | 108 58 |
| Costs | 11 37 |
| | $1,422 85 |
| Damages on this sum at ten *per cent. per annum* from September 1, 1873, to date of decree, October 6, 1885, when injunction was dissolved (in lieu of interest) | $1,721 25 |
| | $3,144 10 |

This should have been the amount of the decree, if no credit had been allowed on the judgment; but owing doubtless to a mistake in the calculations the decree was for $3,200.02, which is too much by $55.92. If this credit had been allowed, as upon the evidence now before the court it should have been, the calculation would have been as follows:

| | |
|---|---:|
| Amount of judgment | $1,302 90 |
| Int. from April 11, 1872, to July 8, 1873 | 97 07 |
| Costs | 11 37 |
| | $1,411 34 |
| Paid on judgment | 243 67 |
| | $1,167 67 |
| Int. from July 8, 1873, to September 1, 1873, when injunction took effect | 10 30 |
| | $1,177 97 |
| Damages on same at 10 *per cent. per annum* from September 1, 1873, to October 6, 1885 | 1,425 01 |
| | $2,602 98 |

Thus there was an error of $597.06 in the amount stated to be due from the plaintiff in the decree of October 6, 1885. But as this decree must be reversed *in toto*, because it improperly dissolved the injunction, which should have been continued in force till the regular hearing of the cause on

its merits, the defendants below, when this cause is re-manded to be farther proceeded with, will be at liberty by any proper testimony, if any can be produced, to show, that this credit should not be given. The above calculations are based on the evidence now in the cause and may of course be changed by further testimony.

For the reasons, I have assigned, the decree of October 6, 1885, must be reversed, set aside and annulled, and the appellant, Benjamin McCoy, must recover of the appellee, Addison McCoy, the administrator of Lucinda Rexroade, his costs in this Court expended to be paid out of the assets of his intestate in his hands to be administered; and this Court must enter a decree overruling the motion of Addison McCoy, the administrator of Lucinda Rexroade, to dissolve the injunction and continuing said injunction in force till the hearing of the cause on its merits; but requiring Benjamin McCoy to file an amended bill making Sarah E. Jack and William E. Jack, her husband, and Mary Stewart defendants and to file with said amended bill the original agreement under seal dated June 8, 1867, referred to in his original bill as executed by Lucinda Rexroade, whereby she sold to him all her interest in the estate of Gen'l William McCoy; and said Benjamin McCoy must be required to so expedite the cause by having the summons to answer the original bill and this amended bill served on all the defendants in the amended bill or by having order of publication made against those, who are non-residents of this State, so that this cause shall be set for hearing as to all the defendants within three months, after the mandate of this Court is entered in the court below, under the penalty of dissolving said injunction and dismissing said suit, unless he can show good cause, why he has not expedited the suit as required; and this cause must be remanded to the Circuit Court of Harrison to be further proceeded with according to the principles laid down in this opinion and further according to the principles governing courts of equity.

Johnson, President, concurs and Snyder, Judge, concurs in the conclusion and syllabus.

REVERSED. REMANDED.